**Nancy BERNIE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 82–2238.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1983.

Decided July 29, 1983.

Charles Rick Johnson, Johnson, Eklund & Davis, Gregory, S.D., for appellant.

Philip N. Hogen, U.S. Atty., Bonnie P. Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Nancy Bernie filed this medical malpractice action against the United States under the Federal Tort Claims Act (FTCA). The district court granted the government's motion for summary judgment. On appeal, Bernie argues that Drs. Gilmore and Colberg were federal employees for purposes of invoking FTCA liability and that factual questions were raised concerning Dr. Hinde's negligence. We affirm the district court's dismissal of all claims involving Gilmore and Colberg, but agree that in the claim involving Hinde, summary judgment was improper. We reverse and remand for further proceedings on the issue of Dr. Hinde's negligence.

## I. Background

On September 25, 1978, Nancy Bernie sought treatment at the Indian Health Service Hospital (IHS) in Wagner, South Dakota, in connection with her pregnancy. She was examined by Dr. Hinde, an IHS staff physician, and Dr. Gilmore, a contract-physician who visited IHS on a weekly basis. Upon examination the doctors discovered that Bernie's membranes had ruptured and contractions had not begun. This condition, coupled with the fact that Bernie had Rh negative blood, necessitated Bernie's transfer to Sacred Heart Hospital in Yankton, South Dakota, on September 26, 1978. Sacred Heart provides medical treatment to Indian patients under a contractual arrangement with IHS.

At Sacred Heart labor was induced and a baby delivered under the supervision of Dr. Gilmore and Dr. Colberg, a resident physician at Sacred Heart. Bernie alleges that following delivery the attending physicians failed to give her a necessary Rhogam injection, negligently administered a blood transfusion, and failed properly to remove the placenta from her uterus.

Approximately six weeks later Bernie again visited IHS and complained that she had been weak and confined to bed since her delivery and that she was unable to care for her home and children. Bernie was examined by both Dr. Hinde and Dr. Gil-

more and was informed that this was a natural reaction to childbirth. During this visit Dr. Gilmore inserted an IUD loop which Bernie alleges was improperly inserted.

When Bernie began to hemorrhage six weeks later, she sought medical care from Dr. Honke, a private practitioner in Wagner, South Dakota. Dr. Honke admitted her to the Wagner Community Hospital where she underwent dilatation and curettage surgery. This surgery revealed placental tissue remaining in her uterus as well as a urinary bladder infection presumably caused by improper insertion of the IUD.

On May 14, 1981, Bernie filed a complaint against the United States pursuant to the FTCA, 28 U.S.C. § 1346 and §§ 2671–2680. After the government moved for summary judgment, a hearing was held on October 8, 1982, and the motion was granted.

II. Discussion

A motion for summary judgment should be sustained only if the pleadings, affidavits and discovery findings "show that there is no genuine issue of material fact and that the moving party is entitled to relief as a matter of law." *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982). "When reviewing the district court's entry of summary judgment, this court applies the same standard the district court utilized in granting the motion for summary judgment." *Id.*

Bernie contends that Dr. Gilmore and Dr. Colberg were acting as federal employees when they treated her so that the FTCA applies to their actions. "The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). The FTCA specifically excludes from this liability torts committed by "any contractor with the United States." 28 U.S.C. § 2671.

The Supreme Court in *Orleans* held that the power to control is pivotal in determining whether an individual is an employee of the United States for the purposes of the FTCA. *United States v. Orleans, supra,* 425 U.S. at 814, 96 S.Ct. at 1976; *see Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2220, 37 L.Ed.2d 121 (1973). The Court emphasized that federal funding or policing of federal standards and regulations does not create employee status. *United States v. Orleans, supra,* 425 U.S. at 815, 96 S.Ct. at 1976. The question to be answered is whether "day-to-day operations are supervised by the Federal Government." *Id.*

Because IHS did not supervise the day-to-day operations of Drs. Gilmore and Colberg, they cannot be classified as federal employees and the United States cannot be held liable for their negligence under the FTCA. Dr. Gilmore was employed by the University of South Dakota School of Medicine Medical Services Plan. The Medical Services Plan contracted with IHS to supply physician consultation based on a fee schedule. Any income generated from Dr. Gilmore's treatment of IHS patients was paid directly to Medical Services Plan and IHS did not exercise control over nor dictate Dr. Gilmore's medical judgment in his treatment of patients. Similarly, Dr. Colberg was a resident physician at Sacred Heart Hospital when he treated Bernie and not employed by IHS. Sacred Heart was under contract to IHS to provide medical care to Indian patients, but IHS did not exercise control over nor dictate medical judgment in Sacred Heart's provision of contract health services. It is clear that Dr. Gilmore and Dr. Colberg were employees of independent contractors holding service contracts with the government and were not acting as federal employees.

Bernie argues that if her FTCA claim fails, the government's liability can be established under the alternative theories of retained control, vicarious liability, or liability for an activity which creates a peculiar risk of harm or is inherently dangerous.

We have carefully examined Bernie's arguments based on these theories and find them without merit. The district court correctly awarded summary judgment with respect to all claims involving the furnishment of medical services by Dr. Gilmore and Dr. Colberg.

■ Bernie next contends that the district court erred in ruling that she did not allege negligence on the part of Dr. Hinde. The government argues that neither the complaint nor the accompanying affidavits make assertions that Dr. Hinde was negligent.

Modern rules allow for liberal construction of pleadings. We have recognized that "courts should be reluctant to dismiss a complaint summarily, and to that end should construe pleadings liberally." *Orlando v. Alamo,* 646 F.2d 1288, 1289 (8th Cir.1981). Bernie's complaint alleged that the placenta was not properly removed from her uterus after delivery. This allegation addresses the failure of Dr. Hinde properly to evaluate Bernie's complaints and diagnose her condition when Bernie visited IHS for treatment six weeks after her delivery, and a factual question exists as to whether or not Dr. Hinde was negligent in this respect. Since it is indisputable that Dr. Hinde, as staff doctor for the IHS, is an employee of the federal government, this court holds that summary judgment was improperly entered with respect to Bernie's claim involving the negligence of Dr. Hinde.

The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings.