Thomas CARTER, et al., Plaintiffs,

v.

UNITED STATES of America (VETERANS ADMINISTRATION), Defendant.

No. S90–448 (RLM).

United States District Court, N.D. Indiana, South Bend Division.

June 24, 1991.

Barry Rooth, Merrillville, Ind., for plaintiffs.

Clifford D. Johnson, Asst. U.S. Atty, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

Miller, District Judge.

This case presents an issue not addressed by any previously reported case: whether the United States, when sued under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, for an act of alleged medical malpractice, is entitled to the protection of the $500,000.00 limitation on medical malpractice awards that Indiana law provides to "qualified health care providers", notwithstanding that the United States is not a "qualified health care provider" under Indiana law. For the reasons that follow, the court concludes that the United States is entitled to the protection of that statutory "cap" on recovery.

Thomas and Colleen Carter claim that Thomas Carter received negligent medical care in 1987 at the Richard Roudebush Veterans Administration ("VA") Hospital in Indianapolis. They fulfilled the administrative prerequisite to bringing this action and now seek damages for Mr. Carter's injuries in the amount of $3,000,000.00 and for Mrs. Carter's loss of consortium in the amount of $757,500.00. This court has jurisdiction pursuant to 28 U.S.C. § 1346(b). The government's amended answer asserts the following affirmative defense:

Plaintiffs may not recover, in any judgment entered by this court, any sums in excess of the amount authorized and/or permitted under Indiana Code § 16–9.5–2–2.

The Carters seek summary judgment as to this affirmative defense and ask the court to find as a matter of law that the federal government is not entitled to the limitation of damages provided by IND. CODE 16–9.5–2–2.

The Indiana Medical Malpractice Act, IND. CODE 16–9.5–1–1 *et seq.*, was enacted to alleviate the rising cost, and dwindling availability, of medical malpractice insurance, which, in turn, resulted in the decline of medical services in Indiana. To provide some protection to health care providers and ensure the availability of health care services within the state, the Indiana legislature created a patient compensation fund, to which health care providers contribute, and established limits for liability and patient remedies. *Sue Yee Lee v. Lafayette Home Hospital, Inc.*, 410 N.E.2d 1319, 1323–24 (Ind.1980); *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585, 589–90 (1980).

The Act defines a "health care provider" as:

... an individual, partnership, corporation, professional corporation, facility or institution licensed or legally authorized by this state to provide health care or professional services as a physician ... [or] hospital....

IND. CODE 16–9.5–1–1(a)(1). A "physician" is an individual licensed to practice medicine under state law, IND. CODE 16–9.5–1–1(b), and a "hospital" is a public or private institution licensed under state law, IND. CODE 16–9.5–1–1(d).

To be qualified for the Act's protection, a health care provider must file proof of financial responsibility and pay a surcharge to the patient compensation fund. IND. CODE 16–9.5–2–1(a). The United States does not claim to have done so. For health care providers so qualified, the Act limits a provider's liability to $100,000 per occurrence of malpractice. IND. CODE 16–9.5–2–2(b). Any amount due from a judgment

or settlement in excess of $100,000 is paid from the patient compensation fund. IND. CODE 16–9.5–2–2(b), (c). The total amount recoverable for injury or death of a patient due to an act of malpractice occurring before January 1, 1990 is $500,000. IND. CODE 16–9.5–2–2(a).

A "patient" is:

... an individual who receives or should have received health care from a health care provider ... and includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider. Derivative claims include, but are not limited to, the claim of a ... relative ... including claims for loss of services, loss of consortium, expenses, and other similar claims.

IND. CODE 16–9.5–1–1(c). Thus, a claim against a state licensed physician or hospital based on malpractice that occurred in 1987 can result in recovery of no more than $500,000 for the patient and the patient's spouse.

The Carters claim that because the VA hospital and its physician-employees are not licensed by the state, and because the VA hospital did not comply with the requirements of the Indiana Act, the United States is not a qualified health care provider entitled to protection of the Act's damages cap. The United States does not dispute that its health care facilities and physician-employees are not licensed by the state and that it does not comply with the Act's requirements. The United States cannot be required to pay into the state-created patient compensation fund. The United States does not contend that any malpractice settlement or judgment against it would be paid from this fund or that its liability should be limited to $100,000. It does contend, however, that the Carters' recovery is limited to $500,000, notwithstanding its noncompliance with the Act.

■ The source of the United States' liability is found in its waiver of sovereign immunity as expressed in the FTCA:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances....

28 U.S.C. § 2674. Because Mr. Carter alleges that he received negligent treatment in Indiana, the law of Indiana applies.

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The Carters claim that a private individual (in this case, a private health care provider) under like circumstances would be denied the benefit of the damages cap in IND. CODE 16–9.5–2–2 if the individual had not been state licensed, had not paid contributions to the patient compensation fund, or otherwise had failed to comply with the state's malpractice act. Therefore, they argue, the United States should be denied benefit of the cap. The Carters urge the court to consider the "whole law" of the state in which the alleged negligence occurred in determining the manner and extent of the government's liability, citing *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), in which the Supreme Court determined that choice of law rules, as well as substantive law of the state where the alleged negligence occurred, governed the action. The Carters also cite *Dalehite v. United States*, 346 U.S. 15, 30–31, 73 S.Ct. 956, 965–966, 97 L.Ed. 1427 (1953), which states that the purpose of the FTCA was to allow suits against the government for negligence. However, the *Dalehite* Court went on to state that FTCA plaintiffs "obtain their 'right to sue from Congress [and they] necessarily must take [that right] subject to such restrictions as have been imposed.' " *Dalehite*, 346 U.S. at 31, 73 S.Ct.

at 965 (*quoting Federal Housing Administration v. Burr*, 309 U.S. 242, 251, 60 S.Ct. 488, 493, 84 L.Ed. 724 (1940)). For this reason, the Court determined that the plaintiffs had no cause of action for government officials' negligence in carrying out discretionary duties.

The Carters rely on *Taylor v. United States*, 233 F.Supp. 1008 (D.N.J.1964), in which a plaintiff brought suit against a VA clinic under the New Jersey wrongful death act. A state statute limited damages against not-for-profit hospitals to $10,000. The district court found that neither the United States nor the VA was such an organization and, therefore, the damages limitation did not apply.

The Carters also cite *Gallea v. United States*, 779 F.2d 1403 (9th Cir.1986), in which the federal government was immune from suit for serving an inebriated person alcohol at an enlisted men's club. The state imposed liability only on businesses licensed to serve alcohol, and because the federal government was not licensed by the state to serve alcohol, the court concluded that:

> Since California courts narrowly construe the exception to the general liquor-provider immunity and since the legislature obviously intended the immunity exception to be limited to liquor providers licensed under California law, we cannot say that a private person in circumstances similar to the Club would be liable.

*Gallea*, 779 F.2d at 1406. This holding, however, was not extended to medical malpractice cases against the federal government. In *Fetter v. United States*, 649 F.Supp. 1097 (S.D.Cal.1986), the court stated:

> Plaintiff interprets *Gallea* to hold that an entity may not benefit from a protective statute unless it is likewise subject to the burden of licensing restrictions. This court, however, reads *Gallea* differently. The court's concern in *Gallea*, as in other challenges under the FTCA, was the identification of "a private person in a similar situation." [*Gallea* 779 F.2d at 1406]. In certain frameworks, the pri-

vate person analogy may depend on licensing; in other instances, licensing will not be the predominant factor.

> The situation of the military medical officers treating plaintiff is most similar to private doctors. They are both "health care providers" within the meaning of Cal.Civ.Code § 3333.2. Accordingly, the United States may claim the $250,-000 limitation on noneconomic damages.

*Fetter*, 649 F.Supp. at 1100–01. After the *Fetter* decision, the Ninth Circuit expressly decided that the damages cap of the California Civil Code applies to federal hospitals even though the state statute expressly covers health care providers which are licensed by the state. *Taylor v. United States*, 821 F.2d 1428, 1431 (9th Cir.1987), *cert. denied*, 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988).

In contrast to the small number of cases the Carters cite, the United States presents exhaustive authority for its position that the state damages cap should apply to this case. The United States notes that the term "like circumstances" under the FTCA does not mean that the government must in all respects be the same as a private individual; the FTCA accounts for the fact that the government is not subject to state law. "Like circumstances", then, means "similar circumstances" or "the most reasonable analogy." *LaBarge v. Mariposa County*, 798 F.2d 364, 367 (9th Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987).

The most recent of several cases on point is *Starns v. United States*, 923 F.2d 34 (4th Cir.1991), which held that Virginia's medical malpractice damage cap applied to federal hospitals, notwithstanding the fact that the statutory definition of health care provider only included institutions licensed by the commonwealth. The court noted that the source of the government's liability is the FTCA, not the state's liability cap.

> [T]he source of the government's liability is the FTCA and not the VMMA's cap. *See Lucas v. United States*, 807 F.2d 414, 417 (5th Cir.1986). In a suit under the FTCA, a plaintiff may only recover against the government to the extent the

government has waived its sovereign immunity. While Virginia law informs us on how a private party would be treated, it is incapable of telling us to what extent the federal government has waived its sovereign immunity. *See Reilly v. United States*, 863 F.2d 149, 162 (1st Cir.1988); *Lucas*, 807 F.2d at 417.... The FTCA assures the federal government of that treatment accorded private parties. The government's liability is to be determined "in accordance with the law of the place where the [negligent] act or omission occurred." 28 U.S.C. § 1346(b) (1988). Accordingly, Virginia law, as applied to private parties in "like circumstances," determines the extent of the government's liability in this case. Since private health care providers in Virginia would in "like circumstances" be entitled to the benefit of section 8.01–581.15, so, too, is a federally operated hospital in that state.

*Starns*, 923 F.2d at 37.

The Fifth Circuit applied the same reasoning in *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir.1986):

Texas law informs us how a private party would be treated; it does not tell us, indeed it cannot, the extent to which the federal government has waived its sovereign immunity. By excluding federally operated institutions from coverage under § 11.02, the Texas legislature simply acknowledged the limit of its power. The Federal Tort Claims Act assures the federal government of that treatment accorded private parties in Texas. Hospitals and health care providers licensed in Texas are subject to the § 11.02 liability limit. Therefore, § 11.02 also applies to a federally operated hospital under the Federal Tort Claims Act.

In *Kennedy v. United States*, 750 F.Supp. 206, 212–13 (W.D.La.1990), as in this case, the state's medical malpractice act placed a $100,000 limit on a health care provider's liability and provided up to $400,-000 of damages to each patient which would be payable from the patient compensation fund. The court followed the holdings of *Lucas* and *Taylor* and noted that

because the federal government cannot be compelled to contribute to the state's patient compensation fund, it did not claim entitlement to the $100,000 liability limitation. *Kennedy*, 750 F.Supp. at 212 n. 8. In this case, the government also seeks a limitation of the total recovery available to the Carters, but does not claim entitlement to the liability cap of $100,000 available to Indiana health care providers who contribute to the patient compensation fund.

In addition to the cases limiting recovery against the United States for medical malpractice, in several cases the federal government was immune from suit under state worker compensation laws even though it did not comply with the states' requirements; the federal government was treated like a private employer in "like circumstances." *See In re All Maine Asbestos Litigation*, 772 F.2d 1023, 1027–28 (1st Cir.1985), *cert. denied sub nom. Raymark Industries, Inc. v. Bath Iron Works Corp.*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986); *Griffin v. United States*, 644 F.2d 846, 847–48 (10th Cir. 1981); *Giannuzzi v. Doninger Metal Products*, 585 F.Supp. 1306, 1309–10 (W.D.Pa.1984).

The Carters note that this is a case of first impression in the Seventh Circuit, and they ask the court to deny the United States the benefit of the damages cap because to do otherwise would, they claim, undermine the FTCA's purpose of providing a remedy to those harmed by the negligence of government employees. Further, they argue, the United States, unlike private health care providers, is unaffected by the rising malpractice insurance premiums and, therefore, does not need the protection of a damages cap. The Carters correctly note that the Indiana Act was enacted to promote state, not federal, interests.

■ The FTCA, however, is an exception to the general, long-standing rule of sovereign immunity. Such exceptions are strictly construed. *Lojuk v. Quandt*, 706 F.2d 1456, 1460–61 (7th Cir. 1983). But for the FTCA, the plaintiffs would have no recovery at all. The majority of the cases interpreting the "like circumstances" language

of the FTCA conclude that it gives the federal government all the protection a private person would have, and the federal government's exemption from state licensing requirements does not prevent it from being similar to private persons and entitled to the same protection. Those cases do not bind this court, *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123–1124 (7th Cir.1987); *Richards v. Local 134, Int'l Brotherhood of Electrical Workers*, 790 F.2d 633, 636 (7th Cir.1986), but the court finds their reasoning persuasive.

 The cardinal principle to be drawn from the defendant's authorities is that the extent of the waiver of governmental immunity is a matter of federal law rather than a matter for state legislatures. The Indiana Act, viewed as a whole, precludes the United States from becoming a "qualified health care provider". To be a "qualified health care provider", a provider must be "licensed or legally authorized by this state to provide health care or professional services by a physician [or] hospital". IND. CODE 16–9.5–1–1(a)(1). The United States cannot acquire a license from the State of Indiana; IND. CODE 16–10–1–7 exempts federal hospitals from the licensing requirement and procedure. The Act's "legally authorized" language was added in 1979 as part of legislation concerning partnerships and professional corporations, P.L. 152, providing poor support for the proposition that the "legally authorized" language encompasses federal hospitals.

Perhaps the legislature exempted federal hospitals for want of any perceived authority to exercise over them; perhaps it exempted federal hospitals because they did not share the experience of, or contribute to, the rising cost of medical malpractice insurance. In either event, elimination of federal hospitals from the state malpractice act's scheme was a state legislative decision, which does not control the extent to which the federal government has waived its immunity.

The court does not hold, and the government does not seek a holding, that a medical malpractice claimant against the United States is limited by the Indiana Act's $100,-000.00 limitation on liability of a single health care provider. IND. CODE 16–9.5–2–2(b). At argument, the United States assured the court that it did not believe that the $100,000 limitation was available to it.

The court agrees with the United States that under the "most reasonable analogy" approach, pursuant to IND. CODE 16–9.5–2–2(a), the plaintiffs may recover no more than $500,000.00 in the aggregate. Accordingly, the court DENIES the plaintiffs' motion for summary judgment on the affirmative defense grounded in that statute.

SO ORDERED.