Eugene OWEN and Dora Owen, Individually and As Next Friend For Alicia Marie Owen, A Minor, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 90–8195.

United States Court of Appeals, Fifth Circuit.

July 18, 1991.

Rehearing and Rehearing En Banc Denied Aug. 29, 1991.

---

D. Bruce La Pierre, Peter R. Maier, Robert S. Greenspan, Asst. Director, Jacob M. Lewis, Civ. Div. U.S. Dept. of Justice, Washington, D.C., John F. Paniszczyn, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for defendant-appellant.

William Vance Dunnam, Jr., Dunnam, Dunnam, Horner & Meyer, Waco, Tex., for plaintiffs-appellees.

Before GOLDBERG, HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The United States appeals an order denying it the protections of Louisiana's malpractice liability cap. We conclude that, although it has not contributed to a patient's compensation fund, the United States is in "like circumstances" with private individuals who have contributed to the fund, and that the cap is valid under the Louisiana constitution.

### I.

Eugene and Dora Owen, individually and as next friends of their daughter Alicia

Marie Owen, filed this action against the United States under the Federal Tort Claims Act to recover for the negligence of physicians at an army hospital in Fort Polk, Louisiana. The Owens contend that the physicians failed to timely detect and diagnose a dermoid cyst in the lower region of Alicia's back.

We reach in this appeal only the issue of the availability of Louisiana's malpractice liability cap to the United States and its validity under Louisiana law. *See* La.R.S. § 40:1299.42 (West Supp.1991). After a non-jury trial, the district court found that government physicians were negligent and awarded $3,902,400 in damages. The district court postponed entry of the judgment, however, pending the Louisiana Supreme Court's consideration of the validity of the cap under the state constitution in *Williams v. Kushner*, 549 So.2d 294 (La. 1989), and this court's consideration of the availability of the liability cap as a defense to the United States in *Simon v. United States*, 891 F.2d 1154 (5th Cir.1990).

When neither court reached the relevant issue, the district court concluded that the United States could not rely on the cap because it had not contributed to a patients' compensation fund as required by the statute. His decision conflicted with that of the only other Louisiana district court to have considered the issue. *See Kennedy v. United States*, 750 F.Supp. 206 (W.D.La.1990). The United States now appeals to this court, and we reverse.

## II.

■ The Owens first contend that the United States did not properly present the cap issue to the district court. We disagree. As the district court noted in its opinion, the United States both pled § 40:1299.42 as a defense in its second amended answer and set forth the cap as one of its contentions in the pre-trial order. The Owens emphasize that the United States listed the cap as a contention, and not a disputed issue, in the pre-trial order. They quote extensively from *Simon v.*

*United States*, 891 F.2d 1154 (5th Cir.1990), where we held that the United States waived § 40:1299.42 as a defense by failing to raise it until after trial in a Fed.R.Civ.P. 59(e) motion to alter or amend the judgment. In *Simon*, we described the cap as an issue that was at least partially factual, and we rejected the United States' contention that the Rule 59(e) motion was a "pragmatically sufficient time" to raise the defense because we believed that it would have changed "the character of the trial" had it been raised earlier. *Id.* at 1159. The fact that the United States both pled the cap and specifically noted it in the pre-trial order distinguishes *Simon*. The Owens clearly had sufficient notice that the United States would rely on § 40:1299.42.

## III.

■ Louisiana cannot by its law make the United States liable. The United States is liable only to the extent it waives sovereign immunity, here by the Federal Tort Claims Act. "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. As true with all statutes waiving the sovereign immunity of the United States, we must strictly construe § 2674. *Levrie v. Department of Army*, 810 F.2d 1311, 1314 (5th Cir.1987).

In *Lucas v. United States*, 807 F.2d 414 (5th Cir.1986), this court held that Texas' malpractice liability cap limited the liability of the United States under § 2674. The Texas statute in *Lucas* capped civil liability of "physicians and health care providers" at $500,000, not including necessary expenses. *See* Tex.Rev.Civ.Stat. Art. 4590i, § 11.02 (Vernon 1986).[1] Lucas argued that § 11.02 was not available to the United States because the statute defined "health care providers" to include only state-licensed persons and facilities and, thus, to exclude federal facilities. We were persuaded that this argument rested upon an erroneous assumption—that Texas law con-

---

1. The Texas Supreme Court, on certification of *Lucas*, found § 11.02(a) unconstitutional under the Texas constitution. *Lucas v. United States*, 757 S.W.2d 687 (Tex.1988).

trolled the scope of the federal government's waiver of immunity. Texas did provide a cap to the liability of certain types of defendants, and Texas law defines these types. Which of the types are under like circumstances is, however, a federal question. That is, a state can create a liability scheme, but the threshold inquiry into the scope of the federal government's consent to be sued remains. That consent was only to the liability of individuals in like circumstances. The relevant question, then, was whether the federal defendants were in "like circumstances" as the private health-care providers subject to § 11.02.

The Ninth Circuit relied on *Lucas* in concluding that California's malpractice liability cap, quite similar to the Texas cap, was available to the United States. *Taylor v. United States*, 821 F.2d 1428 (9th Cir.1987). Similarly, the First and Eleventh Circuits have allowed the United States the benefit of state collateral source statutes even though the statutes expressly applied only to state-licensed persons and facilities. *See Reilly v. United States*, 863 F.2d 149 (1st Cir.1988); *Scheib v. Fla. Sanitarium & Benev. Ass'n*, 759 F.2d 859 (11th Cir.1985).

■ Louisiana's malpractice liability cap differs from the caps at issue in *Lucas* and *Taylor.* Like the Texas and California statutes, § 40:1299.41 defines "health care providers" to include only state-licensed persons and facilities. But § 40:1299.42 is not available across the board to all health care providers; instead, the statute imposes two additional conditions on the cap. First, the defendant must have filed with the state insurance commissioner proof of financial responsibility. And second, the defendant must have contributed to a patients' compensation fund. *See* § 40:1299.42(A)(1) and (2). Section 40:1299.42(B) limits recoverable damages, excluding necessary expenses, to $500,000, limits the liability of health care providers to $100,000, and provides for payment of damages between $100,000 and $500,000 from the patients' compensation fund.

■ This appeal thus presents a somewhat more difficult question than *Lucas* and *Taylor.* As the United States is clearly solvent, in any relevant sense, the complication is that the federal government never contributed to the compensation fund. The United States has offered to pay damages of up to $500,000 plus necessary expenses. But, of course, a private health care provider could not, after the fact, gain the protection of § 40:1299.42 by such an offer. *See Abate v. Healthcare Intern., Inc.,* 560 So.2d 812 (La.1990); *Williams v. St. Paul Ins. Companies,* 419 So.2d 1302 (La.App. 4th Cir.1982). Nonetheless, we are persuaded that the United States is entitled to the protections of § 40:1299.42.

The "like circumstances" inquiry is not overly stringent. As we explained in an earlier case:

> [The FTCA] is given broad interpretation to effectuate the legislative aim of putting citizen and national sovereign in tort claim suits on a footing of equality as between private parties within that state. Nice pieces of casuistry and hypersensitive legalisms are avoided.

*Roelofs v. United States,* 501 F.2d 87, 92 (5th Cir.1974). *Roelofs* itself involved a provision in the Louisiana Workers' Compensation statute that immunized from third party suits entities that either carried compensation insurance for their contractors' employees or paid their compensation benefits. This court held that the immunity was available to the United States because, by contract, it required its contractor to maintain compensation insurance and agreed to reimburse the expense. We reasoned that, through the alternative scheme, "the goals of Louisiana and the United States [were] mutually met." *Id.* at 93.

In identifying persons in like circumstances, we find it significant that state health care providers do not contribute to the compensation fund. Rather, a separate provision, § 40:1299.42, limits their liability to $500,000, not including necessary expenses. Like state providers, the United States does not contribute to the compensation fund, but neither does it drain the fund. And while the wealth of even "millionaire doctors" is subject to fluctuation, the federal government's relevant solvency

is certain and perpetual. In sum, then, because the United States has met the objectives of § 40:1299.42, it is in "like circumstances" with private individuals who have contributed to the fund and therefore enjoy capped liability.

## IV.

■ The Owens alternatively argue that the cap is invalid under Louisiana's constitution. The Louisiana Supreme Court has three times confronted, though never fully decided, the validity of the cap under the Louisiana constitution.[2] First, in *Sibley v. Board of Sup'rs of Louisiana*, 462 So.2d 149 (La.1985), a case involving a state health care provider, the Court held that § 40:1299.42 is valid under the due process and equal protection clauses of both the federal and state constitutions and the access to the courts clause of the state constitution. The Court later granted rehearing on several issues, however, including the validity of the cap under the equal protection clause of the state constitution. In its second opinion, the Court expressly rejected the federal equal protection analysis employed in its first opinion and announced a new framework for scrutinizing claims under the state's equal protection clause, a framework giving more than minimal scrutiny to non-suspect classifications. *See Sibley v. Board of Sup'rs of Louisiana*, 477 So.2d 1094 (La.1985). The Court remanded to the trial court for further proceedings to determine if the statutory classification in § 40:1299.42, a classification based on physical condition, furthers an appropriate state interest. The case subsequently settled. *See Deegan v. Raymond Int'l Builders, Inc.*, 518 So.2d 1082, 1085 n. 1 (La.App. 5th Cir.1987).

There were two appellate decisions between *Sibley II* and the third relevant Supreme Court decision. In *Williams v. Kushner*, 524 So.2d 191 (La.App. 4th Cir. 1988), a case involving a private health care provider, Louisiana's Fourth Circuit addressed the question left open in *Sibley II* and concluded that the cap is valid under the state's equal protection clause because

the classification based on physical condition furthers the state's interest in the availability of medical care. The Fourth Circuit also upheld the cap under the access to the courts clause of the state constitution.

The following year, in *LaMark v. NME Hospitals, Inc.*, 542 So.2d 753 (La.App. 4th Cir.1989), the Fourth Circuit again faced the constitutional issue, but with a new twist. The appellants argued that § 40:1299.42 violates the state's equal protection clause because of a second statutory classification, a classification based on the number of claimants per act of malpractice. This argument rested on the fact that the $500,000 cap is the total recoverable per act of malpractice, regardless of the number of claimants. The Fourth Circuit concluded that this second classification also furthers the state's interest in the availability of medical care.

Finally, in *Williams v. Kushner*, 549 So.2d 294 (La.1989) (per curiam), the Supreme Court affirmed the Fourth Circuit's decision in *Williams*. The Court granted the writ to finally decide the constitutional issue, but upon closer analysis, concluded that the issue was not properly before it because the attending physician settled with the plaintiff before trial for $100,000. The Court did, however, uphold the portion of the statute limiting recovery from the compensation fund to $400,000. *See also Stuka v. Fleming*, 561 So.2d 1371, 1373 n. 7 (La.1990) (noting but not reaching the constitutional issue); *Ewing v. Aubert*, 566 So.2d 616 (La.1990) (concluding that the appellant was without standing to raise the constitutional issue).

■ The United States urges that the cap is valid under the Louisiana constitution, the Owens urge that it is invalid, and both urge, as an alternative, that we certify the issue to the Louisiana Supreme Court. In diversity cases, in the absence of a controlling precedent by the highest court of the state, this court generally defers to the holdings of lesser courts "unless we are convinced by other evidence

---

**2.** The Owens do not raise any federal constitu-    tional issues.

that the state law is otherwise." *Lucas,* 807 F.2d at 418; *accord Bailey v. Southern Pacific Transportation Co.,* 613 F.2d 1385, 1388 (5th Cir.1980).

In *Lucas,* after reviewing several state appellate decisions finding the Texas cap unconstitutional, we decided to certify the issue to the Texas Supreme Court for three reasons. First, it was unclear whether the relevant appellate decisions were based on the federal or state constitution. Second, the fact that the Texas Supreme Court initially granted a writ in one of the cases evidenced that court's concern. The Court ultimately denied the writ, but cautioned that the appellate court need not have addressed the constitutional issue. Finally, the Court's resolution of other issues under the relevant constitutional provisions left us unable to predict their view with confidence. *See Lucas,* 807 F.2d at 418–21.

■ This case is different. The Louisiana Supreme Court spelled out the state constitutional inquiry in *Sibley II;* and in *Williams,* the Fourth Circuit closely followed *Sibley II* in concluding that the cap is valid under the state's equal protection clause. The Owens point to the dissenting opinions in *Sibley II* and *Williams* as an indication that the Supreme Court would find the cap invalid under the state constitution, but as we read the dissents, only one of the justices has clearly found the cap unconstitutional. *See Williams,* 549 So.2d at 308–12. It is true that the Court initially granted a writ to review *Williams;* as in *Lucas,* this could indicate concern. It may equally be no more than a felt need to lay the issue to rest. Thus, this fact *alone* does not justify certifying the issue to the Louisiana Supreme Court. Instead, we defer to the Fourth Circuit's decision in *Williams* and conclude that the cap is valid under the state constitution.

## V.

Because we conclude that Louisiana's malpractice liability cap is available to the United States, we need not reach the remaining issues on appeal. In sum, then, we conclude that the federal government is entitled to the cap's protections because it is in "like circumstances" as private health care providers subject to the cap and that the cap is valid under the Louisiana constitution.

The judgment of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.