**Martin LOZADA, Sr., as Father and Next Friend, for and on Behalf of Martin LOZADA, Jr., a Minor, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 91–2409.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1992.

Decided Sept. 9, 1992.

J. Patrick Green, Omaha, Neb., argued (J. Thomas Rowen, on brief), for appellant.

Irene M. Solet, Washington, D.C., argued (Robert S. Greenspan, on brief), for appellee.

Before HANSEN, Circuit Judge, HEANEY, Senior Circuit Judge, and ROSENBAUM,* District Judge.

HANSEN, Circuit Judge.

Martin Lozada, Sr., filed this action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680, seeking damages for the injuries sustained by his son during the child's birth at the Ehrling Berquist Regional Air Force hospital in Bellevue, Nebraska. The government admitted that the physicians were negligent but disputed the issue of damages. After a nonjury trial, the district court found that Lozada's damages totalled $1,292,738. The district court, however, reduced the judgment against the United States to $1,000,000, by concluding that the Nebraska Hospital-Medical Liability Act (Nebraska Act), Neb. Rev.Stat. §§ 44–2801 *et seq.* (1988) limits the federal government's liability, 140 F.R.D. 404. Lozada appeals this decision. We affirm.

The issue in this case is whether the United States, when sued under the FTCA for an act of medical malpractice occurring in Nebraska, is entitled to the protection of the one million dollar limitation on medical malpractice awards that Nebraska law provides to "qualified health care providers." Based on the following reasons, we conclude that the United States is entitled to the protection of the Nebraska statutory "cap" on recovery.

## I.

The Nebraska Act was enacted to "serve the public interest by providing an alternative method for determining malpractice claims in order to improve the availability of medical care, to improve its quality and to reduce the cost thereof, and to insure the availability of malpractice insurance coverage at reasonable rates." § 44–2801. In order to qualify under the Nebraska Act, a health care provider must file proof of financial responsibility, pay an annual surcharge into the excess liability fund, and post a notice of qualification under the Nebraska Act. Neb.Rev.Stat. §§ 44–2821, 2824. Once a health care provider is "qualified," the Nebraska Act limits a provider's liability to $100,000 and a plaintiff's total recovery to $1,000,000. Neb.Rev.Stat. § 44–2825(1) (1988). The excess liability fund pays for damages between $100,000 and $1,000,000. Neb.Rev.Stat. § 44–2825(3).

Lozada argues that the Nebraska Act does not limit the federal government's liability for three reasons. First, the Air Force hospital failed to comply with the state's requirements to be a "qualified health care provider" under the Nebraska Act. Second, participation of health care providers under the Nebraska Act is voluntary.[1] Third, the Nebraska Act provides that if a health care provider fails to qualify under the Act, the provisions of the Act do not apply and liability is determined under the common law.

■ The source of the federal government's liability in this case is the FTCA,

---

* The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

1. In 1986, according to the Director of the Nebraska Department of Insurance, less than twenty percent of eligible hospitals in Nebraska participated under the Nebraska Act. Amicus Curiae Brief at 9.

which provides a "limited waiver" of sovereign immunity. *Bernie v. United States,* 712 F.2d 1271, 1273 (8th Cir.1983) (citing *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976)). The FTCA states in part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under *like circumstances. . . .*

28 U.S.C. § 2674 (emphasis added). "The 'like circumstances' inquiry is not overly stringent." *Owen v. United States,* 935 F.2d 734, 737 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992). In fact, the FTCA should be interpreted broadly in order to effectuate the legislative aim of putting private parties and the federal government on an equal footing. *Id.* (citation omitted); *see also Starns v. United States,* 923 F.2d 34, 37 (4th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

■ Lozada first argues that the federal government is not in "like circumstances" with a qualified health care provider which can take advantage of the Act's limits, because the federal government failed to comply with the specific requirements of the Nebraska Act. We disagree. While it is clear that the government hospital did not fully comply with the specific requirements of the Nebraska Act, it is willing to perform the functional equivalent of formal compliance, such that it is in "like circumstances" to a hospital which has technically qualified under the Act.

In *Owen,* the Court of Appeals for the Fifth Circuit addressed the issue of whether the Louisiana medical malpractice liability cap applied to the United States. 935 F.2d at 737. The Louisiana statute limited a provider's liability to $100,000 and a plaintiff's total recovery to $500,000. *Id.* The Louisiana patient's compensation fund pays for damages between $100,000 and $500,000. *Id.* Under the Louisiana plan, a health care provider qualified only if the provider filed proof of financial responsibility and contributed to the patient's compensation fund. *Id.* Although the federal government did not file proof of financial responsibility nor contribute to the fund, the court stated that the "federal government's relevant solvency is certain and perpetual." *Id.* at 737–38. The court also emphasized that the federal government offered to pay an amount up to the $500,-000 liability cap, and therefore, no financial drain would occur on the state's patient compensation fund. *Id.* at 737. The court held that the United States was in "like circumstances" with the health care providers who voluntarily participated in the Louisiana plan, "because the United States has met the objectives of [the Louisiana statute]." *Id.* at 738.

Here, as in *Owen,* the federal government has offered to pay Lozada's damages up to the $1,000,000 "cap" under the Nebraska Act. Brief for appellee at 18. Recovery is assured through Congress's permanent appropriation to the judgment fund. 31 U.S.C. § 1304. Therefore, Lozada will be assured the maximum amount of damages permitted under the Nebraska Act without any financial drain on the state's excess liability fund. As in *Owen,* the federal government here has clearly met the objectives of the Nebraska Act. Conceptually, the federal government's willingness to pay a damages amount up to the $1,000,000 statutory cap is the functional equivalent of a $900,000 contribution to the state's patient compensation fund. Accordingly, we hold that the federal government is in "like circumstances" with "qualified health care providers" and entitled to liability protection under the Nebraska Act. *Accord Carter v. United States,* 768 F.Supp. 670 (N.D.Ind.1991) (applying a similar Indiana statute which requires proof of financial responsibility and payment of a surcharge into the patient compensation fund).

Lozada next argues that the federal government is not in "like circumstances" with qualified health care providers because participation under the Nebraska Act is voluntary. Because of this fact, Lozada contends that the federal government is more appropriately in "like circumstances" with those health care providers who have

chosen not to participate in the Nebraska Act. We again disagree.

"[A] court's job in applying the ["like circumstances"] standard is to find the most reasonable analogy." *LaBarge v. Mariposa County*, 798 F.2d 364, 367 (9th Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987). Because the federal government is willing to meet the objectives of the Nebraska Act, we hold that the most reasonable analogy in applying the "like circumstances" standard is between the federal government and a health care provider which has chosen to participate in the Nebraska Act. *See Owen*, 935 F.2d at 738. Therefore, the United States, when sued under the FTCA for this act of medical malpractice occurring in Nebraska, is entitled to the protection of the one million dollar limitation on medical malpractice awards that Nebraska law provides to "qualified health care providers."

Our holding that the government is in "like circumstances" with a qualified health care provider under the Nebraska Act also disposes of Lozada's third argument, i.e. that the extent of the damages awarded is to be determined under the common law. The statutory limitation applies instead.

## II.

Accordingly, the remaining two issues raised by Lozada need not be addressed by this court. The district court's decision to limit the federal government's liability is affirmed.

HEANEY, Senior Circuit Judge, dissenting.

This case presents an issue of first impression in the circuit courts: Does a medical malpractice liability cap with the characteristics of the Nebraska Act apply to the federal government under the FTCA? In answering this question today, the court abandons any reasonable interpretation of the term "like circumstances." Furthermore, in attempting to analogize this case to *Owen v. United States*, 935 F.2d 734 (5th Cir.1991), the court ignores key differences between the Nebraska and Louisiana statutory schemes. I take no issue with that part of the court's decision that sets forth the relevant legal standards. I cannot concur, however, in the court's erroneous conclusion that the United States is in "like circumstances" with those health care providers covered by the Nebraska Hospital–Medical Liability Act.

In order to qualify for the protection of the Nebraska Act, a health care provider must meet three qualifications: (1) it must file proof of financial responsibility, (2) it must pay an annual surcharge to the excess liability fund, and (3) it must post a notice informing prospective patients that they will be subject to the terms of the Nebraska Act "unless they file a refusal to be bound by the act with the Director of Insurance of the State of Nebraska." Neb. Rev.Stat. § 44–2821, 2824 (1988). Participation under the Nebraska Act is entirely voluntary; according to the director of the Nebraska Department of Insurance, less than twenty percent of eligible hospitals met the Act's requirements in 1986.

Like eighty-nine other Nebraska hospitals, the United States met none of the three requirements for participation under the Act: It filed no proof of financial responsibility; it paid no surcharge to the excess liability fund; and it posted no notice of its participation under the Act. The court contends, however, that the federal government's position is more closely analogous to the twenty-two hospitals that met all three requirements. It does so by exercising some legal slight of hand: As long as the United States is "willing to perform the functional equivalent of formal compliance" after it has been sued, we will pretend that it complied with the requirements of the Act all along. This new rule puts the United States in "like circumstances" with no one, because no one else can take advantage of the court's legal fiction. Private hospitals in Nebraska are not permitted to decide on a case-by-case basis whether to "meet the objectives of the Nebraska Act"; they either participate under the Act by meeting all three of its requirements or they do not.

The court places great emphasis on the similarities between this case and *Owen*. There are, however, two fundamental differences between the Louisiana and Nebraska Acts. The first is a provision in the Louisiana Act that limits the liability of state-run hospitals to $500,000. The *Owen* court stated that

> [i]n identifying persons in like circumstances, we find it significant that *state health care providers do not contribute to the compensation fund*. Rather, a separate provision, § 40:1299.42, limits their liability to $500,000, not including necessary expenses. Like state providers, the United States does not contribute to the compensation fund, but neither does it drain the fund.

935 F.2d at 737 (emphasis added). The *Owen* court went on to place the United States in the position of a state-run hospital whose liability is capped at $500,000. In contrast, the liability of private Louisiana hospitals that contribute to the compensation fund is limited to $100,000.

The second difference between the Louisiana and Nebraska Acts is that the Louisiana Act does not permit patients to "opt out" of the Act's coverage. *See* La.Rev. Stat.Ann. § 40:1299.42 (West 1991). If a Louisiana hospital chooses to participate under the Act, its patients must either accept the liability cap or switch hospitals. In Nebraska, participation under the Act is voluntary for both health care providers and patients; any patient may file with the state a notice of refusal to be bound by the Act. Lozada's parents, however, had no reason to "opt out" before their son's birth; the United States never notified Lozada's parents of its participation under the Act, nor was there any reason for Lozada's parents to believe that the Act applied to the United States. A particularly disturbing element of today's decision is that while the court permits the United States to "opt in" to the Act's coverage *ex post facto*, it does not give Lozada the same opportunity to "opt out." This effectively eliminates the "opt out" provision of the Act for patients of federally run hospitals, while permitting those hospitals to "have their cake and eat it too."

I believe that the United States is in "like circumstances" with the eighty percent of Nebraska health care providers that, like itself, have not complied with any of the requirements of the Nebraska Act. Any other conclusion is both illogical and inequitable, stretching the FTCA beyond its plain meaning and working a further injustice upon the Lozada family. I respectfully dissent.