**Thomas CARTER and Colleen Carter, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 92–1940.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1992.
Decided Dec. 29, 1992.

---

Barry D. Rooth, Theodoros, Theodoros & Rooth, Merrillville, IN, for plaintiffs-appellants.

Clifford D. Johnson, Asst. U.S. Atty., Office of the United States Attorney, South Bend, IN, Irene M. Solet, Robert S. Greenspan, Michael S. Raab, Department of Justice, Civil Division, Washington, DC, for defendant-appellee.

Before COFFEY and EASTERBROOK, Circuit Judges, and LAY, Senior Circuit Judge.*

EASTERBROOK, Circuit Judge.

Indiana has set limits on damages in cases of medical malpractice. A person injured by poor medical care may not recover more than $100,000 from a health care provider that has established its financial responsibility and paid an annual fee; the victim may recover an additional sum from the pool funded by these fees. Ind.Code §§ 16–9.5–2–1, 16–9.5–2–2. Today the victim's maximum recovery is $750,000, and over the long run this is also the tortfeasor's anticipated outlay—$100,000 directly plus $650,000 of what is in effect compulso-

---

* Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation.

ry insurance administered by the state. For injuries before January 1, 1990, the cap was $500,000 ($100,000 plus $400,000). Any tortfeasor that makes "advance payments" to the victim receives credit against its liability. Ind.Code § 16–9.5–2–4. Our case presents two questions: (1) may the United States take advantage of this limit without contributing to the state's fund; (2) if yes, is the value of other federal payments deducted before or after application of the cap?

Thomas Carter had a 10% disability rating as a result of a wound during his tour of duty in Vietnam. In search of relief from pain this injury continued to cause him, Carter underwent an operation during December 1987 in one of the Veterans' Administration's hospitals in Indiana. Things got worse. Today the Department of Veterans' Affairs considers Carter 100% disabled and has increased his benefits accordingly. After making the necessary administrative claim, Carter and his wife filed this suit under the Federal Tort Claims Act, contending that negligence by the VA's physicians, rather than the risks inherent in all surgical procedures, is to blame for the unhappy outcome. After determining that the present value of the payment stream attributable to the difference between 10% and 100% disability exceeds $500,000, the United States asked the district judge to dismiss the action. First the district court decided that the United States is not liable to pay more than $500,000 even though it is not a "qualified provider" under Indiana law. 768 F.Supp. 670 (N.D.Ind.1991). Later the court dismissed the suit outright, finding that the Carters could not recover a positive amount because the value of the veterans' benefits must be subtracted from the maximum exposure rather than from the total harm caused by the injury. 785 F.Supp. 797 (1992).

■ Indiana limits recoverable damages only if the defendant is a "qualified provider" of medical care, which entails furnishing proof of financial responsibility plus chipping in to the pool. The United States is not a "qualified provider." The charge used to finance the pool is a tax, from which the national government is immune. Because it will never be called on to make a payment on behalf of the United States, Indiana did not request the federal government to make voluntary contributions to the fund. The VA also did not use any of the three devices to establish "financial responsibility": filing proof that it is insured at a specified level, posting a bond, or providing a financial statement showing to the satisfaction of state officers that the entity can pay judgments entered against it. Ind.Code § 16–9.5–2–6. According to the Carters, the failure of the United States to meet the requirements of Indiana law means that it remains liable for the full harm caused by its negligence.

Whether the United States is *itself* a "qualified provider" is not, however, the question posed by the Federal Tort Claims Act. "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances". 28 U.S.C. § 2674. So when a state distinguishes private from public liability, the liability of the United States follows the private model. Often this works to the advantage of victims: immunities with which states may clothe their public bodies do not protect the United States. Sometimes it works to the advantage of the national Treasury: if Indiana provided in so many words that the maximum liability of a private hospital is $500,000 and of a public hospital $5 million, the United States would get the benefit of the rule applicable to the "private individual". Reference to private liability is a form of vicarious protection, preventing states from adopting rules in order to enrich their own citizens at the expense of the deepest pocket. Indiana invited its private hospitals and physicians to jump through some hoops that are beside the point for the national government. According to the record, more than 90% of the private medical providers in Indiana have leaped at the chance. Financially responsible private medical providers in Indiana have limited tort liability. No one doubts that the national government is financially responsible in the sense that it can and will pay any judgment en-

tered against it. A "private individual in like circumstances" would receive the benefit of the cap; so too does the United States.

■ "*Like* circumstances"—not "*identical* circumstances." The national government is never situated identically to private parties. Our task is to find a fitting analog under private law. Thus the United States may be liable for negligence in carrying out acts that no private person performs, because there are "like" circumstances that lead to private liability. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (operation of a lighthouse). This gate swings both ways. The United States receives the benefit of rules ordinarily applicable to private persons, even though some private defendants (in Indiana, those who neglect to establish their financial responsibility and pay the surcharge for the pool) may be treated differently. We therefore agree with *Owen v. United States*, 935 F.2d 734 (5th Cir.1991), and *Lozada v. United States*, 974 F.2d 986 (8th Cir.1992), which hold that limitations on private liability under similar statutes apply to the United States. It follows, as the district judge held, that the cap for the United States must be derived from the victim's maximum entitlement rather than the $100,000 that a private tortfeasor pays. Private providers of medical care pay $100,000 directly and another $400,000 (today, $650,000) indirectly through compulsory public insurance. Having saved the expense of contributing to the state's pool, the United States must pay the whole amount in order to come as close as possible to the treatment of "a private person under like circumstances".

■ Plaintiffs concede that the additional benefits the United States is paying because of Carter's iatrogenic injury should be deducted from their recovery in tort. They contend, however, that the court should offset damages and benefits before applying the statutory cap. Assume that the Carters can establish injury of $1.5 million and that the present value of the incremental benefits is $600,000. Using the plaintiffs' methodology, the court would start with the $1.5 million, subtract the value of the benefits, and apply the cap to the resulting $900,000. That implies an award of $500,000 in the FTCA action. Using the VA's methodology, the court would start with a maximum exposure of $500,000 and subtract the $600,000 value of the benefits. The difference, a negative $100,000, would not require the victim to pay anything to the United States; it simply means that the suit must be dismissed. If, however, the benefits' value were only $400,000, the case must go to trial, because they would not exhaust the cap. The district judge concluded that Indiana uses the VA's suggested approach of deducting the payments from the cap rather than from the actual injury. Because the Carters accept the VA's submission that the present value of the incremental benefits exceeds $500,000, the judge dismissed the action.

Fundamentally, the question is: who receives the benefit of "advance payments"? If the court deducts the payments before applying the cap, then their full value goes to the victim, who receives his full damages (subject to the cap) plus all "advance payments." If the court deducts the payments after applying the cap, then their full value goes to the defendant. Indiana law speaks directly to this question:

> Evidence of an advance payment is not admissible until there is a final judgment in favor of the plaintiff, in which event the court shall reduce the judgment of the plaintiff to the extent of the advance payment. The advance payment shall inure to the exclusive benefit of the defendant or his insurer *making the payment*.

Ind.Code § 16–9.5–2–4. If victims received the benefit of the advance payments, the maximum liability would be exceeded, and injurers would have little reason to make voluntary payments. Because the judicial process takes a long time to resolve tort litigation, interim payments are on the whole highly beneficial to victims. Injurers that can recoup the value of these payments are more likely to make them.

■ Although the Carters protest that letting the United States keep the benefit of veterans' benefits is inconsistent with

the recognition in cases such as *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), that Congress wanted to assist veterans, the fact remains that *Brooks* itself said that incremental veterans' benefits must be offset against recoveries under the FTCA. The Court wrote: "[W]e now see no indication that Congress meant the United States to pay twice for the same injury." *Id.* at 53, 69 S.Ct. at 921. Veterans' benefits therefore cannot be analogized to payments from a third party, which cumulate with tort awards under the collateral-source rule. *Steckler v. United States*, 549 F.2d 1372, 1379 (10th Cir.1977); *Feeley v. United States*, 337 F.2d 924, 933–34 (3d Cir.1964); *Green v. United States*, 530 F.Supp. 633, 644 (E.D.Wis.1982), affirmed, 709 F.2d 1158 (7th Cir.1983). When the VA is both injurer and source of incremental benefits, payments made in the two capacities must be netted to produce a single recovery. Indiana tells us that the recovery in tort cannot exceed $500,000. Victims may have the greater of the $500,000 or the extra veterans' benefits, but they may not have both. Of course they cannot have even the $500,000 unless they prove both a tort and damages at or above that level, but we have assumed throughout this opinion that the Carters could do so. Because damages for loss of consortium are included in the cap, see Ind.Code § 16–9.5–1–1(c), the aggregate recovery of both Carters is limited to $500,000, less than the value of the federal benefits. The Carters' additional arguments do not require separate discussion.

■ Readers of this opinion should guard against the conclusion that we have passed on the question whether the projected value of ongoing veterans' benefits is an "advance" payment for purposes of Indiana's law. Today's value of tomorrow's benefits is a prophesy, not a fact. Congress could change the law, reducing or even eliminating the payments the Carters now receive month by month. Or the Carters might renounce receipt of these benefits. 38 U.S.C. § 5306 (Supp. IV). Indiana provides that payments in hand reduce the recovery dollar-for-dollar. Our conclusion that victims are entitled to the greater of actual loss (capped at $500,000) or the incremental benefits implies giving victims a choice. One who recovers a judgment then may elect the cash (reduced by sums already received) or the stream of future payments. Because the Carters have not asked for this relief and at oral argument disclaimed interest in the possibility, we need not decide whether this approach would produce the best approximation of the treatment of private persons under state law.

AFFIRMED.

LAY, Senior Circuit Judge, dissenting.

I must respectfully dissent.

Under the Federal Tort Claims Act, the statutory requirement is that "the United States shall be liable ... *in the same manner* and to the *same extent* as a private individual *under like circumstances.*" 28 U.S.C. § 2674 (emphasis added).

Assuming the United States, under Indiana law, comes "as close as possible" to a "qualified provider," a proposition which in itself I find to be extremely dubious,[1] there exists an even more compelling

---

**1.** It is indeed a stretch of logic to hold that the United States is more like the medical provider who pays a surcharge premium and qualifies for the malpractice cap under Indiana law than the private provider who does not do so.

The fallacious syllogism used by the majority to reach this conclusion is as follows: (A) Financially responsible private medical providers in Indiana have limited tort liability; (B) the United States Government is a financially responsible medical provider; (C) Therefore, the government is entitled to limited tort liability under Indiana law. The majority's major premise is inaccurate. There are private medical providers in Indiana who are financially responsible who have chosen not to become qualified for limited tort liability.

The government concedes that the private provider, who qualifies under the Act, has limited liability only up to $100,000. It is a state pool which funds the excess up to $400,000, but the government argues that since the United States cannot contribute to the fund, limiting its liability only to $100,000 under the FTCA would produce inequitable results. Therefore, the government is willing to pay up to the $500,000 cap. However, if equity is to determine which rule is to be applied, then we should consider a

reason to reach a different result in the present case. The VA disability benefits received and to be received by the plaintiffs are clearly not "advance payments" under Indiana law. *See* Indiana Code § 16–9.5–2–4. That is not to say a plaintiff suing the United States may receive both his disability benefits and tort damages (a double payment) from the government for the same injury. *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). Under federal law he must reduce any *damages* against the government by the amount of disability benefits received. This is because of *federal* law and not state law. *See Smith v. United States,* 587 F.2d 1013 (3d Cir.1978); *Feeley v. United States,* 337 F.2d 924 (3d Cir.1964). This simply means that the disability benefits should be deducted from the total damages found to exist by reason of the liability of the government.

The issue here, however, is whether the plaintiffs must deduct the disability benefits from the overall damages or whether the plaintiffs are required to deduct those benefits from the "judgment" (with the artificial cap of $500,000) as an "advance payment" under Indiana law. In my opinion, the former approach is required. Federal law does not require a *pro tanto* deduction to be made from the $500,000 cap; more importantly, Indiana law does not require a private party, in like circumstances, to make a *pro tanto* deduction from the $500,000 cap. Under the FTCA, the government should be treated the same as a private party in like circumstances. Thus, if plaintiffs recover $900,000 and the disability payments are $300,000, the cap, if applicable, should be applied to the remaining $600,000.

I would agree the deduction must come from the artificial cap of $500,000 if VA disability benefits were advance payments or *even analogous* to advance payments received by a private party under Indiana law. The statute clearly says the "judgment" shall be reduced to the extent of the advance payment. Ind.Code § 16–9.5–2–4. But in applying the statutory law, a court must read the Indiana statutes in their entirety. This the majority fails to do. Ind.Code § 16–9.5–2–4 relating to advance payments must be read in conjunction with the Indiana collateral source statute as well as with other statutes relating to advance payments as they are applied to private parties in like circumstances with the government. When read together, Indiana law is clear that disability benefits are not analogous to advance payments.

Under Indiana law, disability benefits received by a plaintiff are deemed a collateral source not otherwise admissible into evidence.[2] The record demonstrates, as the district court found, that the disability benefits received by the Carters do not depend on the United States' liability to them. However, an advance payment under the Indiana Act protects *only* those private parties who have paid against their tort liability. This is demonstrated by the plain

solvent United States adhering to the general policy of tort law to provide full compensatory damages to tortfeasor victims. Rehabilitation expense alone for malpractice victims who suffer serious injuries can easily exceed $500,000. I respectfully submit today's holding to provide an artificial cap of limited damages in VA hospitals unwittingly subjects hospitalized veterans to the role of unfortunate victims of an industry wide insurance effort to unfairly limit compensatory damages to malpractice patients. If this is the law, Congress should change it.

2. Ind.Code § 34–4–36–2 reads as follows: **Admissible evidence.**—In a personal injury or wrongful death action the court shall allow the admission into evidence of:

    (1) Proof of collateral source payments, other than:

        (A) Payments of life insurance or other death benefits;

        (B) Insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or

        (C) Payments made by the state or the United States, or any agency, instrumentality, or subdivision thereof, that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought;

    (2) Proof of the amount of money that the *plaintiff is required to repay,* including worker's compensation benefits, as a result of the collateral benefits received; and

    (3) Proof of the cost to the plaintiff or to members of the plaintiff's family of collateral benefits received by the plaintiff or the plaintiff's family.

meaning of Ind.Code § 16–9.5–2–4 when read in conjunction with the meaning of "advance payment" under Ind.Code §§ 34–3–2.5–1[3] and 34–3–2.5–2.[4] Thus, the disability benefits received by the Carters are *not* analogous to advance payments.

Under Chapter 34, the disability payments are considered collateral source payments, which are not admissible as evidence. *See* Ind.Code § 34–4–36–2(1)(C). There is no evidence that the Indiana state legislature intended disability payments to be one thing under Chapter 34 and another under Chapter 16. Yet this is the result the majority reaches. The government argues that the situation involving disability benefits and offsets against the United States was not contemplated by Chapter 16. This misses the point. The issue is whether the government is *in like circumstances* to a private party who under Indiana law need not offset his disability benefits against the judgment. Clearly it is.

In the present case, it is federal law, not Indiana law, that requires plaintiffs to offset their disability payments against the total damages incurred. *See Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). The FTCA requires us to look at how private parties are treated in like circumstances. Here, the Carters are in like circumstances to a private party in Indiana who is *not* required to offset his pension as an advance payment under Ind. Code § 16–9.5–2–4 by deducting it from the final judgment entered. Thus, if the equal footing status declared by 28 U.S.C. § 2674 means anything, plaintiffs should be entitled to offset their pension benefits against the total damages incurred and not against the artificial cap of the judgment set by the Indiana statute.

---

**3.** Ind.Code § 34–3–2.5–1 reads: **Advance payments in personal injury and property damage cases.**—In any action brought to recover damages for personal injuries, wrongful death or property damage[,] no payment made by the defendant or the defendant's insurance company to or for the plaintiff or any other person, hereinafter called an "advance payment," shall be construed as an admission of liability by any person. Except as provided in section 2 [34–3–2.5–2] of this chapter, evidence of such payment shall not be admissible during the trial for any purpose by either plaintiff or defendant: Pro-

vided further, That this chapter shall not apply to actions in which there is more than one defendant.

**4.** Ind.Code § 34–3–2.5–2 reads: **Evidence of advance payment—Reduction of award.**—If in such action it is determined that plaintiff is entitled to recover, defendant may introduce evidence of any advance payment made, and the court shall reduce the award to the plaintiff to the extent that said award includes an amount paid by any such advance payment.