633 So.2d 136 (1994)
Alfred E. THOMAS, Sr.
v.
INSURANCE CORPORATION OF AMERICA, et al.
No. 93-C-1856.
Supreme Court of Louisiana.
February 28, 1994.
*137 Williams P. Crews, Jr., Robert S. Wright, Natchitoches, for applicant.
Jerald L. Perlman, Shreveport, for respondent.
CALOGERO, Chief Justice.[*]
In this medical malpractice case, we are called upon to decide for the first time how the appropriate statutory provisions regarding Patient Compensation Fund credits affecting the Fund's $400,000 maximum exposure are to be applied when a plaintiff has settled with two or more health care providers. With successive settlements of $100,000 and $40,000 and a gross damage award of $412,500, the district court in this case allowed only a single $100,000 credit while the court of appeal thereafter gave two such credits. For the following reasons, we find that the Patient's Compensation Fund is entitled to two credits, one for $100,000, but the second for only $40,000, the actual amount of that settlement.
In March, 1985, Alfred E. Thomas, Sr. was admitted to the Schumpert Medical Center in Shreveport, Louisiana, under the care of an orthopedic surgeon, Robert E. Holladay, M.D. After a decompressive laminectomy of the back was performed on March 19, 1985, coagulated blood accumulated in the patient's spinal canal. Despite his complaints to the nursing staff of the hospital, which complaints suggested neurological problems, the attending physician was neither notified nor consulted. Furthermore, although Dr. Holladay ordered a CT scan immediately after making rounds on the morning of March 20, 1985, and the scan revealed a hematoma, surgical intervention was not attempted until approximately 1:00 p.m. Subsequently, Thomas has experienced a permanent loss of normal function of both bowel and bladder, and sexual dysfunction.
Contending that the undue delay in recognizing post-operative problems and getting him back to the operating room caused his damages, Thomas filed a request for review with a Medical Review Panel. The panel of three orthopedic surgeons expressed the opinion that, as a medical probability, the patient's damage had occurred before Dr. Holladay first became aware of the problem. Nevertheless, since the panel concluded that the appropriate standard of care required the attending physician to move more quickly in the emergency situation, they found that his conduct, along with that of the medical center, was a "factor of the asserted resultant damages."
After filing suit against the Sisters of Charity of the Incarnate Word, d/b/a Schumpert Medical Center, Dr. Robert E. Holladay, Insurance Corporation of America (Holladay's insurer), and the Commissioner of Insurance in his capacity as Administrator of the Patient's Compensation Fund, Thomas settled his claim against the medical center for $100,000, its liability limit as a qualified health care provider under the Medical Malpractice Act. Subsequently, he compromised his claim against Dr. Holladay and his insurer for $40,000. In the Receipt and Release executed by Thomas on April 24, 1991, the settlement with Dr. Holladay was described as a "compromise of a doubtful and disputed claim and [was] not to be construed as an *138 admission of liability, which [was] expressly denied by Insurance Corporation of America and Robert E. Holladay, IV. M.D."
Thereafter, the matter proceeded to trial by jury against the Louisiana Patient's Compensation Fund on the issue of quantum alone. In accordance with a verdict returned by the jury, judgment was rendered in favor of plaintiff and against the Fund in the amount of $412,500, representing past and future pain, suffering, and mental anguish, subject to a credit of $100,000, together with legal interest thereon from March 11, 1986 until paid. In accordance with the stipulation of the parties, judgment was also rendered in favor of plaintiff for past medical expenses in the amount of $10,610.20, as well as for future medical care and related benefits regarding the injuries sustained by him.
Contesting both the excessiveness of the award and the allowance of only a single $100,000 credit notwithstanding settlements with two health care providers, the Fund appealed the judgment of the trial court after there was denied a Motion For New Trial and Motion for Judgment Notwithstanding The Verdict or Remittitur. Although the Court of Appeal affirmed plaintiff's quantum award, it found that the Fund was entitled to an additional $100,000 credit for plaintiff's $40,000 pretrial settlement with the doctor and his insurer, 621 So.2d 67. (Accordingly, the amount to be paid from the Fund was determined to be $412,500 minus $100,000 minus $100,000, or $212,500.) Plaintiff here seeks review of the Court of Appeal's application of the second $100,000 credit to the advantage of the Patient's Compensation Fund.
Enacted in 1975, Louisiana's Medical Malpractice Act was a legislative response to what was considered a crisis in the delivery of medical services to the people of this state, "ostensibly prompted by the prohibitive costs associated with medical malpractice insurance." Everett v. Goldman, 359 So.2d 1256, 1261 (La.1978). The act provides a scheme for medical malpractice claims against health care providers, qualified in accordance with La.Rev.Stat.Ann. § 40:1299.42(A) (West 1992).[1] Within that scheme, La.Rev.Stat. Ann. § 40:1299.42(B)(1) (West 1992) limits the total amount recoverable for all malpractice claims for injuries or death to a patient to $500,000,[2] and Section 40:1299.42(B)(2) limits the liability of a qualified health care provider for malpractice claims of any one patient to $100,000.[3] If the amount due from either a judgment, settlement or final award in an arbitration proceeding exceeds the total liability of all liable health care providers, the excess up to $500,000 shall be paid from the Patient's Compensation Fund,[4] according to *139 Section 40:1299.42(B)(3)(a). The health care provider who does not qualify under the Act does not receive the benefit of this limit on his liability for claims of medical malpractice.
To determine the amount, if any, to be paid from the Patient's Compensation Fund, Section 40:1299.44(C)(5) provides that the court shall consider the liability of the health care provider as established, where the insured or the self-insured health care provider has paid $100,000. In fact, in Stuka v. Fleming, 561 So.2d 1371, 1374 (La.1990), this Court held that the Fund was precluded from contesting the issue of liability in a malpractice case in which the victim settled with one health care provider for $100,000 and released other health care providers without receipt of any additional consideration. The Medical Malpractice Act contemplates that only the health care provider is to be the actual party defendant. Rather than being either a negligent party or the equivalent of an Article 2315 defendant, the Fund is considered simply a third party with an interest in the proceedings when the damages exceed $100,000. Koslowski v. Sanchez, 576 So.2d 470, 473-74 (La.1991) (quoting Williams v. Kushner, 549 So.2d 294, 296 (La.1989)). This Court in Stuka held that the only issue to be litigated in a claim for damages sustained by the victim as a result of malpractice statutorily admitted by one health care provider is the amount of the damages. (561 So.2d at 1374.) The Court thus acknowledged that the statute affords the Fund fewer rights when claims against multiple health care providers are settled rather than tried.
In this case, the damage award by the jury for the totality of plaintiff's injuries was $412,500. We are asked to determine how the settlement amounts of $100,000 with the self-insured health care provider (Schumpert Medical Center) and $40,000 with the insured health care provider (Dr. Holladay) are to be properly credited.
The only statutory provision which addresses the application of credits from a settlement by the insurer of a health care provider or a self-insured health care provider where the claimant is demanding an amount in excess thereof from the Patient's Compensation Fund is found at La.Rev.Stat.Ann. § 40:1299.42(D) (West 1992). Although Subsection D originally addressed only advance payments to or for the plaintiff by the defendant health care provider or his insurer, and included provision for the reduction of a judgment to the extent of the advance payment, (D)(5)[5] was added by the Legislature by 1984 La.Acts No. 435 § 2 to permit credit from a partial settlement to reduce a judgment against the Fund. The relevant statutory language is as follows:
(D)(5) In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, ... [it] shall not bar the continuation of the action against the patient's compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2). (Emphasis added)
La.Rev.Stat.Ann. § 40:1299.42(D)(5).
We first note that there is no conflict between Section 40:1299.42(D)(5), which becomes applicable with a partial settlement for the sum of $100,000 or less, and Section 40:1299.44(C)(5), which depends upon the payment of $100,000 in settlement by either the insurer or the self-insured health care provider. The latter, Section 40:1299.44(C)(5), provides that the liability of the health care provider is established by the payment of the full monetary extent of that liability under the statute, $100,000.[6] Subsection *140 (D)(5), at issue in this case, on the other hand, addresses the credit permitted the Patient's Compensation Fund for any settlement amount between the health care provider or his insurer and the malpractice claimant. Section 40:1299.42(D)(5) contemplates entitlement of the Fund to a credit for any settlement with the claimant (in the amount of $100,000 or less), while Section 40:1299.44(C)(5) legally establishes the health care provider's liability only in the event that settlement is in the amount of $100,000.
As noted, it is Section 40:1299.42(D)(5), which we must interpret in this case. That statute is ambiguous when more than one settlement is involved, and its literal application would lead in some cases to consequences which do not conform to the purpose and overall scheme of the Medical Malpractice Act. Written in the singular, it appears that the statute contemplates settlement with only one defendant. Furthermore, were settlements by multiple health care providers, no matter how minimal, to trigger multiple $100,000 credits, then settlement, otherwise favored by law, would be seriously discouraged. Also, a settlement to the full extent of his exposure for a malpractice claim by a self-insured provider seemingly would not require any reduction in the judgment to the plaintiff since, as the statute reads, the reduction is "in the amount of malpractice liability insurance in force."[7] At any rate, there is no doubt that there may occur a violation of the limit on a plaintiff's recovery, $500,000 by virtue of Section 40:1299.42(B)(1), if each settlement for $100,000 or less is not credited to any judgment for damages which reach or exceed the Fund's maximum exposure.
Since the language of the statute is susceptible of different meanings, conflicting and/or illogical ones, we are authorized by La.Civ.Code Ann. art. 10 (West 1993) to interpret it as having the meaning that best conforms to its purpose.
Accordingly, we conclude that Section 40:1299.42(D)(5), which refers to a defendant (health care provider) and/or his insurer only in the singular, nevertheless allows a credit for each settlement between the plaintiff and a defendant health care provider and/or insurer. Included for general application to the Act, Section 40:1299.41(B) specifically provides that "the singular shall mean and include the plural." Furthermore, Section 40:1299.42(B)(3)(a), which provides for payment from the Fund of any amount due, from either a judgment or settlement, calculates that amount on the basis of "the total liability of all liable health care providers." (emphasis added)
Section 40:1299.42(D)(5) reduces any judgment to plaintiff in the amount of malpractice liability insurance in force "as provided for in R.S. 40:1299.42(B)(2)." The latter section limits a health care provider's liability to $100,000. We therefore interpret the amount of the initial credit to be $100,000, applicable to the self-insured provider as well as to the insured provider, notwithstanding the language of the statute which provides for any reduction of the judgment "in the amount of malpractice liability insurance in force."[8] There is no reason to distinguish in the provisions of Section 40:1299.42(D)(5) between settlements by commercially insured versus self-insured health care providers. Surely no such distinction was contemplated by the Legislature.
*141 The scheme for medical malpractice claims, as set up by the Legislature and interpreted in the jurisprudence, does not contemplate that litigation be required against each and every negligent health care provider. It surely permits the health care providers to effect settlements, which our judicial system favors. However, if the Fund were permitted a maximum credit for even a "nuisance value" settlement, the claimant would not likely compromise with any malpractice defendant who did not offer to pay its maximum, $100,000 liability. On the other hand, the defendants' incentive for settlement arguably is also lessened, if only one $100,000 credit is allowed for multiple defense settlements. And equally as important, since the Medical Malpractice Act prevents the claimant from recovering more than $500,000 plus interest and cost for all malpractice claims for injuries to or death of a patient, an interpretation of the statute that only a single, $100,000 credit to the Fund is authorized may well prompt violation of this basic limitation on the claimant's recovery. Should multiple settlements total more than $100,000 and damages reach or exceed the Fund's maximum exposure of $400,000, the claimant would recover more than $500,000, despite the prohibition of Section 40:1299.42(B)(1).
Accordingly, in the case of multiple settlements, a single settlement between a defendant and/or his insurer and the plaintiff for a sum of $100,000, or less than $100,000 but more than any other of multiple settlements, shall reduce by $100,000 any judgment in favor of the plaintiff to be paid by the Patient's Compensation Fund. Each other settlement shall reduce the amount due by the Fund by the amount of that settlement.
We believe that this interpretation of La. Rev.Stat.Ann. § 40:1299.42(D)(5) (West 1992) makes sense out of the otherwise vague and ambiguous provisions of the statute and is logically consistent with the Medical Malpractice Act and its aims. By avoiding a literal interpretation of one inconsistent provision and construing the statute so as to produce a reasonable rather than an absurd result, we are performing a traditional court duty while resolving this dispute between the parties, our primary function. Dore v. Tugwell, 228 La. 807, 84 So.2d 199, 204 (1955) (citing State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213, 217 (1942); Berteau v. Police Jury of Parish of Ascension, 214 La. 1003, 39 So.2d 594, 595 (1949); and Webb v. Parish Council of Parish of East Baton Rouge, 217 La. 926, 47 So.2d 718, 720 (1950)).
Applying the statute as interpreted in this opinion, we hold that the Fund is entitled to a credit in the amount of $100,000 for the claimant's settlement with Schumpert Medical Center and to a second credit in the amount of $40,000, the amount of the settlement between the claimant and the treating physician and/or his insurer, both to be applied to the claimant's gross $412,500 judgment.[9]
Accordingly, the judgment of the court of appeal will be upset in part. The first $100,000 credit is appropriate. The second $100,000 credit will be reduced to $40,000, the very sum of that second settlement with Dr. Holladay. The Court of Appeal's action which upset the district court's single credit of $100,000 will to that extent be approved.

DECREE
For these reasons, the judgment of the court of appeal is vacated. The judgment of *142 the district court is reinstated but amended to give the Patient's Compensation Fund an additional $40,000 credit for plaintiff's settlement with Dr. Holladay and his insurer. In all other respects, the judgment of the district court is affirmed.
COURT OF APPEAL JUDGMENT VACATED; DISTRICT COURT JUDGMENT AMENDED AND AS AMENDED AFFIRMED.
NOTES
[*] Lemmon, J., not on panel. Rule IV, Part 2, § 3.
[1] The statute provides that in order to be qualified, a health care provider must file with the Patient's Compensation Fund Oversight Board proof of financial responsibility and pay the surcharge assessed on all health care providers. For self-insureds, qualification is effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the Board. For all others, qualification is effective at the time the malpractice insurer accepts payment of the surcharge.
[2] According to the provisions of La.Rev.Stat. § 40:1299.42(B)(1), as enacted, "The total amount recoverable for any injury or death of a patient may not exceed five hundred thousand dollars plus interest and cost." The 1984 amendment retained the $500,000 limit on medical malpractice recovery, but allowed future medical care and related benefits in addition to that limit on claims of malpractice.
[3] According to the provisions of La.Rev.Stat. § 40:1299.42(B)(2), as it read in 1985, "A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars for all malpractice claims because of injuries to or death of any one patient." The 1990 amendment inserted the phrase "plus interest thereon accruing after April 1, 1991" after the words "one hundred thousand dollars."

Note that Justice Dennis, in his concurring opinion in Stuka v. Fleming, 561 So.2d 1371, 1375 (La.1990), suggested that there may be a situation in which the Fund will be liable to pay more than $400,000 for injuries contributed to by more than one health care provider. That concurring opinion recites factors which might be considered in determining whether a single limitation applies to damages caused by plural defendants: "whether the defendants engaged in concerted action, whether the damages are severable, or whether the damages may be apportioned between the tortfeasors." Needless to say, we are not called upon in this case to express any view regarding the situation alluded to in that concurring opinion.
[4] Created in La.Rev.Stat.Ann. § 40:1299.44(A)(1) (West 1992), the Patient's Compensation Fund is a designated fund of the state treasury "in an amount equal to the total amount of funds paid into the treasury as a result of the voluntary collections from private health care providers provided for hereunder."
[5] At the time of the 1984 amendment, Subsection D consisted of a single paragraph. Pursuant to the statutory revision authority of the Louisiana State Law Institute, however, that single paragraph was subdivided thereafter into five numbered paragraphs. The only other revision to Subsection (D)(5) was made by 1986 La.Acts No. 499, § 1 to require that written notice of a partial settlement be sent to the attorney general.
[6] Interestingly, however, this Court in Koslowski v. Sanchez, 576 So.2d 470, 473 (La.1991), concluded that the insurer of the health care provider settled the claim against its insured "as required by the statute" when the claimant received only $93,500. The claimant had signed a receipt for $100,000, and the Court reasoned that the facial settlement for $100,000 "met the statutory requirements for access to the Fund."

In a subsequent case, where it appeared that the settlement and corresponding release were for $95,000, this Court remanded the matter to the trial court "for evidentiary hearing to determine amount of discount allowed and to determine if settlement equaled to $100,000." That action was taken by a vote of 4 to 3, with at least one justice expressing the view that Koslowski was either distinguishable or should be overruled. Russo v. Vasquez, 94-CC-0054, 631 So.2d 457 (La.1994) (per curiam).
[7] Under this interpretation, the $100,000 settlement by the self-insured hospital in this case would not result in a credit to the Fund.
[8] In Section 40:1299.42(A), the Act permits health care providers to qualify whether as insured or self-insured, as long as they file proof with the board of financial responsibility and pay the surcharge.
[9] We appreciate the fact that, in this case in which the gross damages do not exceed the statutory cap of $500,000, the plaintiff's interpretation of Section 40:1299.42(D)(5) (to reduce the Fund's exposure by a single $100,000 credit by virtue of the settlement with the hospital without further reduction for the $40,000 settlement with the physician) would not violate the $500,000 limit on malpractice claims. Whether we address a claim for gross damages in the amount of $500,000 or more, or gross damages of less than $500,000 but more than $100,000, however, we conclude that the reasonable construction is to adopt neither the Fund's position that it is entitled to a $100,000 credit for each settlement nor the Plaintiff's position that the Fund is entitled to no reduction in its exposure beyond the initial $100,000 credit. By crediting any judgment against the Fund with $100,000 for the largest settlement and with the precise amount of added settlements, the Plaintiff will not recover more than $500,000 either in this case, or in the next, and excess credits to any judgment against the Fund will not unfairly reduce Plaintiff's recovery of the established damages.