748 So.2d 514 (1999)
In re Lillian JOHNS and Shalonda Johns applying to obtain an order to exhume the body of the deceased, Melvin Johns
v.
Dr. Naurang AGRAWAL, et al.
In re Lillian Johns and Shalonda Johns
v.
Naurang Agrawal, M.D., et al.
Nos. 99-CA-0499, 99-CA-0500.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
Writ Denied February 11, 2000.
*515 Joseph W. Thomas, New Orleans, Louisiana, Counsel for Plaintiffs/Appellants, Lillian Johns and Shalonda Johns.
Stephen M. Pizzo, Blue Williams, L.L.P., Metairie, Louisiana, Counsel for Defendant/Appellant, Dr. Francisco Jaramillo.
Gregory C. Weiss, Terese M. Bennett, Weiss & Eason, L.L.P., New Orleans, Louisiana, Counsel for Defendants/Appellants, Tulane University Medical Center and Dr. Naurang Agrawal.
Richard P. Ieyoub, Attorney General, J. Marc Vezina, Kathy E. Vernaci, Special Assistants Attorney General, Vezina and Gattuso, Gretna, Louisiana, Counsel for Defendants/Appellants, State of Louisiana and Dr. Francisco Jaramillo.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY, and Judge JAMES F. McKAY, III.
MURRAY, Judge.
In this medical malpractice suit, Lillian Johns and Shalonda Johns assert survival and wrongful death claims arising from the death of their husband and father, Melvin Johns. Through exceptions and a motion for partial summary judgment at issue in this appeal, the defendant health care providers, Dr. Naurang Agrawal, Dr. Francisco Jaramillo, and Tulane University Medical Center (TUMC),[1] as well as the State *516 of Louisiana,[2] contend that this suit must be dismissed because the plaintiffs have already been awarded $500,000 in a federal judgment against the United States. For the reasons assigned, we affirm the judgment in part and reverse in part.

FACTS AND RELEVANT PROCEDURAL HISTORY
Melvin Johns died in October 1994 from renal cell carcinoma. For many years preceding his death, Mr. Johns received medical treatment from doctors at the VA Medical Center (the VA), an agency of the United States government. In addition, he began seeing the defendant private health care providers, some of whom were employed by TUMC, in about 1987. All of these medical providers, save the VA, were "qualified" under the applicable provision of Louisiana's Medical Malpractice Act, La. R.S. 40:1299.41 et seq. The plaintiffs contend that Mr. Johns died because none of his physicians timely diagnosed and/or treated his pre-cancerous condition.
In late 1994, plaintiffs filed a medical malpractice complaint requesting a medical review panel against those providers qualified under this state's Medical Malpractice Act. However, the plaintiffs' only recourse against the VA for its alleged malpractice was to bring a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, in federal court. 28 U.S.C. § 1346(b). Plaintiffs instituted such a claim against the VA in federal court on March 25, 1996. Because the medical review panel required under state law was still considering the plaintiffs' complaint against the private health care providers, plaintiffs named only the United States as a defendant in the federal suit. In October 1996, however, the United States filed a third-party complaint in the federal court suit against the private health care providers, seeking contribution and/or indemnity based upon those providers' alleged joint liability for Mr. Johns' death.
In December 1996, the medical review panel rendered its opinion,[3] and plaintiffs filed this suit for damages in Orleans Parish Civil District Court on the following day. TUMC and Dr. Agrawal answered, asserting exceptions of lis pendens and nonjoinder of a necessary party as well as a third-party claim against the VA for contribution and/or indemnity. On January 23, 1997, the United States responded to this third-party claim by removing this state court action to federal court.
Plaintiffs moved to remand the case to state court. In September 1997, holding that the removal of a derivative claim was improper, the federal court granted the plaintiffs' motion to remand, mentioning that "[t]he inefficiency of the resulting dual proceedings is not lost on the Court." Following the remand, the private providers acknowledged that a state court was without jurisdiction over a claim under the FTCA, and voluntarily dismissed their third-party demand against the VA in February 1998.[4]
The federal court suit was tried, and on March 30, 1998, the federal court rendered judgment in plaintiffs' favor. That judgment expressly held: (1) that the VA was liable because its physicians had misdiagnosed *517 a mass in 1968 and failed to reassess Mr. Johns' condition in 1979, causing him to lose a ninety-percent chance of survival;[5] (2) that the plaintiffs' wrongful death and survival damages amounted to $550,000; (3) that under Owen v. United States, 935 F.2d 734 (5th Cir.1991), cert. denied, 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992), the VA was entitled to the benefit of Louisiana's cap on damages for medical malpractice; (4) that although there were multiple tortfeasors and separate survival and wrongful death claims, plaintiffs were entitled only to $500,000 for the VA's malpractice; (5) that because the VA's wrongful conduct occurred prior to Louisiana's adoption of comparative fault in 1980, it was not necessary to determine percentage(s) of fault attributable to any other tortfeasors; and (6) Mr. Johns was not contributorily negligent. Accordingly, the plaintiffs were granted a judgment for $500,000 against the United States. This judgment was satisfied.[6]
In September 1998, the defendants filed an exception of no right of action and a motion for partial summary judgment in this state court suit.[7] They argued that because the plaintiffs had already received $500,000 from one tortfeasor for a single injury, La. R.S. 40:1299.42 B(1) prohibits any additional recovery against any qualified health care provider. An exception of nonjoinder was also filed, asserting that because the VA is not a party to this suit, there can be no fair adjudication of the competing interests. The defendants thus contended that, as a matter of law, they were entitled to a dismissal of all claims against them.
The trial court granted only partial relief to the defendants in the judgment now at issue. The district judge ruled that the plaintiffs had no right of action for any damages beyond the $500,000 already received, but because the medical malpractice statute specifies that an award is limited to "five hundred thousand dollars plus interest and cost," the plaintiffs remain entitled to recover interest and costs not awarded in the federal judgment. The exception of nonjoinder was overruled. Both the plaintiffs and the defendants have appealed the judgment reflecting these rulings.[8]

ARGUMENTS AND DISCUSSION

DISMISSAL AS A MATTER OF LAW BASED UPON PLAINTIFFS'"FULL RECOVERY"
The defendants first argue that under the applicable jurisprudence, only one damage cap applies in this case even though there are multiple defendants, multiple plaintiffs, and both survival and wrongful death claims are being asserted. See Turner v. Massiah, 94-2548 (La.6/16/95), 656 So.2d 636; LaMark v. NME Hospitals, Inc., 542 So.2d 753 (La. App. 4th Cir.), writ denied, 551 So.2d 1334 (La.1989) and Todd v. Sauls, 94-10, pp. 21-22 (La.App. 3d Cir.12/21/94), 647 So.2d 1366, 1381-82, writs denied, 95-0206, 95-0219 (La.3/24/95), 651 So.2d 289; and Conerly v. State, 97-0871 (La.7/8/98), 714 So.2d 709. They thus contend that once the plaintiffs received $500,000 from the VA, a qualified health care provider under Owen v. United States, supra, no further relief is available under R.S. 40:1299.42 B(1), and this suit must be dismissed. In a separate appellate brief, Dr. Jaramillo asserts that under R.S. 40:1299.42 B(2) and 40:1299.44 *518 C(5), as interpreted in Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990), the plaintiffs' receipt of at least $100,000, with or without interest, relieves all qualified health care providers of any further liability. Because only the Patient's Compensation Fund (PCF) can be cast for any amounts exceeding $100,000, dismissal of this action is required as a matter of law.
The plaintiffs counter that R.S. 40:1299.41 D specifies that their remedy cannot be affected when a defendant health care provider has failed to qualify under the provisions of the Medical Malpractice Act. Because the VA Medical Center has never qualified under R.S. 40:1299.42 A, they maintain that neither the statutes nor the jurisprudence cited by the defendants apply in this case. The plaintiffs thus assert that the law precludes any consideration of the damages already received from a non-qualified provider such as the VA.
In addition to the above arguments, which were urged in the trial court, the defendants now assert claims based upon the binding nature of the prior federal judgment. They contend both that the federal court's prior determinations as to liability and quantum foreclose any further recovery by these plaintiffs, and that the failure to assert these claims in the federal suit constitutes a waiver of the right to any interest or reimbursement for costs.
Initially, we note that any determination of the preclusive effect to be given to a prior federal judgment must be based upon federal substantive law of res judicata. Reeder v. Succession of Palmer, 623 So.2d 1268, 1271 (La.1993), cert. denied, 510 U.S. 1165, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994). Under our procedural law, res judicata is a defense which must be specially pleaded. La.Code Civ. Proc. art. 927 B.
In this case, the defense of res judicata was not mentioned in any of the defendants' pleadings, including the exceptions, motion, and memoranda at issue in this appeal. See Humphrey v. Robertson, 97-1742 (La.App. 4th Cir.3/11/98), 709 So.2d 333. The only exception of res judicata was filed in the district court on November 30, 1998, after rendition of the judgment at issue in this appeal and after the motions for appeal had been filed and granted. That exception was neither argued nor decided below, nor did any defendant file the exception in this court prior to submission of the case for decision, as permitted by Article 2163 of the Code of Civil Procedure.
Thus, because Civil Procedure article 927 B specifies that the objection of res judicata must be specially pleaded and cannot be raised by the court, the preclusive effect, if any, of the rulings embodied in the federal judgment cannot be considered in this appeal. See Jackson v. Iberia Parish Govt., 98-1810, p. 2, n. 1 (La.4/16/99), 732 So.2d 517, 519, n. 1. Therefore, we must pretermit any discussion of the defendants' arguments based upon waiver of rights or the prior determinations of liability and quantum. Instead, we are limited to deciding whether, as a matter of law, this action must be dismissed because the plaintiffs have already received $500,000 in damages for the VA's medical malpractice.
Louisiana law provides that a medical malpractice claimant, like any other tort victim, has the right under Civil Code article 2315 to recover in full for the damages caused by another's fault. Trahan v. Mc-Manus, 97-1224, p. 5 (La.3/2/99), 728 So.2d 1273, 1276. As the Supreme Court recently noted, "[t]he Medical Malpractice Act simply provides procedures for and limitations on such causes of action when the doctor is a qualified health care provider." Id. Thus, R.S. 40:1299.41 et seq. merely creates an exception to the general tort law and limits the liability of some, but not all, health care providers. Chivleatto v. Divinity, 379 So.2d 784, 786 (La.App. 4th Cir.1979).
*519 It is undisputed that the VA Medical Center has never fulfilled the conditions set forth in R.S. 40:1299.42 A for qualification under the Medical Malpractice Act. The defendants contend that despite this failure, the VA must be considered to be a "qualified" provider under the holding of Owen v. United States, supra. We find, however, that that case is not relevant to the issues presented by this appeal.
In Owen, it was held that the federal government's liability for medical malpractice in this state would be limited to $500,000 under the FTCA, which constitutes a partial waiver of sovereign immunity. It was specifically noted that federal health care facilities did not meet Louisiana's statutory requirements for a "qualified" provider because they are neither licensed by the state, an element of the definition of "health care provider" in R.S. 40:1299.41 A(1), nor did they contribute to the PCF, as specified in 40:1299.42 A(2). As the Fifth Circuit explained, however, the FTCA's provision limiting the government's waiver of immunity did not require a precise conformity to state law, but merely that the sovereign be put on an equal footing with "similarly situated" non-governmental citizens:
Louisiana cannot by its law make the United States liable. The United States is liable only to the extent it waives sovereign immunity, here by the Federal Tort Claims Act. "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C § 2674. As true with all statutes waiving the sovereign immunity of the United States, we must strictly construe § 2674.
Id., 935 F.2d at 736 (citation omitted). It was determined that the federal government met this minimal standard because it was financially solvent and, like state health care providers, it "does not contribute to the compensation fund, but neither does it drain the fund." Id. at 737.
The Owen court thus held that federal law prohibited a damage award against the United States in excess of $500,000. There is nothing in the reasoning or result of that case to support the conclusion that a federal facility is, or must be considered to be, a "qualified" provider in determining the rights and liabilities of others under state law. Consequently, we must decide the question presented here solely by reference to the language of the applicable statutes of the Medical Malpractice Act.
In asserting that these plaintiffs have no right to any further recovery under Louisiana law, the defendants maintain that their status as qualified providers entitles them to the protection of the $500,000 cap in R.S. 40:1299.42 B(1). They correctly note that, in the jurisprudence previously cited, this limitation has been interpreted to be virtually absolute when the only alleged tortfeasors are qualified health care providers as defined in the Act. However, because we have decided that the VA is not a qualified provider under the Medical Malpractice Act, the effect of the VA's payment must be determined under R.S. 40:1299.41 D, which specifies:
A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription....
The defendants apparently concede that under the first sentence of this provision, a claimant has the right to seek unlimited damages from a non-qualified provider, notwithstanding the prior receipt of any sum from a qualified provider and/or the PCF. See, e.g., Ewing v. Aubert, 532 So.2d 876 (La.App. 1st Cir.1988), writ denied, 551 So.2d 1333 (La.1989) (after plaintiffs received $500,000 from a qualified provider's insurer and the PCF, trial was held to *520 determine the liability of a non-qualified provider for additional damages). They argue, however, that because R.S. 40:1299.42 B(1) states that a patient's recovery "shall not exceed" $500,000, this Subsection is not relevant if the circumstances are reversed, i.e., when the claimant seeks additional recovery against the qualified provider(s) after payment of the statutory maximum by a non-qualified provider. The defendants thus contend that the second sentence of R.S. 40:1299.41 D should be interpreted to provide that if a health care provider is not qualified under the Act, "the patient's remedy against that provider will not be affected," but the $500,000 limitation on recovery still applies in determining if any qualified provider could be liable.
Chapter 2 of the Louisiana Civil Code sets forth the rules that guide a court in interpreting legislative acts. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written. La. Civ.Code art. 9. However, if the language of a statute is susceptible of two reasonable interpretations, the legislative intent must be determined by reference to the common meanings of the words as well as the context in which they occur. La. Civ.Code arts. 11, 12; Louisiana Smoked Products, Inc. v. Savoie's Sausage & Food Products, Inc., 96-1716, p. 9 (La.7/1/97), 696 So.2d 1373, 1378. Additionally, Civil Code article 10 mandates that if a statute is ambiguous, "it must be interpreted as having the meaning that best conforms to the purpose of the law." See also Thomas v. Insurance Corp. of America, 93-1856, p. 6 (La.2/28/94), 633 So.2d 136, 140. It is well-established that "because the [Medical Malpractice Act] grants immunities or advantages to a special class in derogation of the general rights available to tort victims, it must be strictly construed against limiting the tort claimants' rights against the wrongdoer." Branch v. Willis-Knighton Medical Center, 92-3086, p. 14 (La.4/28/94), 636 So.2d 211, 217; see also Hutchinson v. Patel, 93-2156, p. 5 (La.5/23/94), 637 So.2d 415, 420, and cases cited therein.
Applying these principles here, we must reject the statutory interpretation urged by the defendants. First, it would discourage, if not foreclose, any settlement with a non-qualified provider unless and until the issues of liability and quantum were resolved as to all qualified providers and the PCF. Such a result was not contemplated under the statutory scheme established by the Act and would be inimical to our judicial system, which favors settlements. Thomas v. Insurance Corp., supra, 93-1856 at p. 7, 633 So.2d at 141.
More importantly, however, we find that the proffered interpretation is unnecessary to effectuate the purposes of the Medical Malpractice Act, which was designed "to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public." Hutchinson v. Patel, supra, 93-2156 at p. 3, 637 So.2d at 419, and cases cited therein. As this court has previously noted, the Act accomplishes these goals by (1) limiting a qualified provider's liability to $100,000, thus stabilizing the cost of malpractice insurance, and (2) providing a solvent source of additional damages through the collection of the PCF's surcharge, which is computed on actuarial principles based upon the known risks of the $400,000 recovery limitation. LaMark v. NME, supra, 542 So.2d at 756. Neither of these components of the legislature's statutory scheme will be impaired by permitting recovery against one or more qualified health care providers, as limited under the Act, notwithstanding any damages received from a non-qualified malpractice defendant. Instead, R.S. 40:1299.42 B will protect both the qualified providers and the PCF from the possible "limitless judgments" and "incalculable instability" noted in LaMark, while the malpractice victim's rights are only restricted to the extent necessary to accomplish the legislature's goals.
*521 We thus find that under R.S. 40:1299.41 D, a patient's recovery of damages from a non-qualified provider does not affect the remedy available against a qualified health care provider, which remains subject to the limitations of the Medical Malpractice Act. Because these plaintiffs have received no monies from any qualified health care provider nor the PCF, neither R.S. 40:1299.42 B(1) nor R.S. 40:1299.42 B(2) deprives them of their right and cause of action against these defendants. Accordingly, the trial court erred in maintaining the defendants' exception in part and in granting Dr. Jaramillo's motion for partial summary judgment. The judgment, therefore, is affirmed to the extent that it permits the plaintiffs to seek interest and costs from these defendants, but reversed as to its dismissal of plaintiffs' claims for damages against the qualified health care providers.
We again emphasize, however, that we are not yet called upon to decide whether the federal court's determinations regarding liability and the measure of plaintiffs' losses are to be given any binding effect in their action against these providers. Moreover, because no claim has yet been asserted against the PCF, we need not address the effect, if any, of the VA's payment on either the amount recoverable from that entity or any future litigation of fault under R.S. 40:1299.44 D(2)(x) and (xi). See, e.g., Gauthreaux v. Trosclair, 95 0549 (La.App. 1st Cir 6/28/96), 676 So.2d 213 (holding that because the plaintiffs' cause of action arose prior to the 1991 addition of these subsections, the PCF could not litigate the non-qualified provider's liability, or effect thereof). Those issues must first be presented to and decided in the trial court.

DISMISSAL BASED UPON NONJOINDER OF V A
The defendants claim that because their alleged acts of malpractice occurred after Louisiana's adoption of comparative fault, but when Mr. Johns remained under the care of physicians at the VA, they are entitled to an apportionment of fault that includes the federal government. In the memo in support of this exception it was argued that if any of the private providers are found liable, it will be difficult to determine each party's right to contribution from another because the VA cannot be joined as a party in state court. The defendants thus assert that this exception must be maintained and the suit dismissed under Civil Procedure articles 641 and 642. We disagree.
Civil Code article 2323 A now provides for a specific apportionment of fault among all tortfeasors, known and unknown, party or nonparty, and without regard to the date of the negligent conduct at issue. Keith v. U.S. Fidelity & Guaranty Co., 96-2075 (La.5/9/97), 694 So.2d 180. Nevertheless, because the record establishes that all of the alleged acts of negligence at issue in this suit occurred after August 1987 and before the 1996 amendment of Civil Code article 2324 B, the substantive rights to contribution among any liable tortfeasors are, by legislative decree, unaffected by the VA's immunity to suit in state court. Aucoin v. State through Dept. of Transportation & Development, 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62. Therefore, whether the "absent" party were a phantom tortfeasor or, as here, an entity not subject to state court jurisdiction, the defendants' rights would be the same. Accordingly, we find no error in the trial court's failure to dismiss this action on the exception of nonjoinder, and the judgment is affirmed as to this ruling.

CONCLUSION
For these reasons, the trial court's judgment is affirmed in part and reversed in part. The exception of no right of action is overruled in its entirety, the motion for partial summary judgment is denied, and the exception of nonjoinder is overruled. The matter is remanded to permit the defendant health care providers to litigate the preclusive effects, if any, of the prior *522 federal judgment, as asserted in their exceptions of res judicata.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] Although another provider, Dr. David O. Shurden, was named as a defendant in the petition, the parties indicate that all proceedings against him were stayed when he subsequently filed for bankruptcy.
[2] The State was named a defendant because plaintiffs asserted a challenge to the constitutionality of the medical malpractice cap. There is no indication in the appellate record, however, that the Patient's Compensation Fund, and/or its Oversight Board, has yet been made a party to this action.
[3] The panel concluded that Dr. Agrawal had breached the applicable standard of care and that this breach was a causative factor in Mr. Johns' subsequent damages, but that both Dr. Jaramillo and TUMC had complied with the applicable standards.
[4] Concomitantly, although not evident in this record, the parties disclosed at oral argument that the VA's third-party claims, asserted in the federal court action against these defendant providers, were voluntarily dismissed prior to trial.
[5] It was specifically held, however, that the VA's failure to use CAT scans to monitor Mr. John's condition from 1984-93 did not constitute negligence.
[6] As appears from exhibits in this record, both parties filed appeals in the federal action, then voluntarily dismissed those appeals in July 1998.
[7] While the exception was jointly filed by Dr. Agrawal, TUMC, Dr. Jaramillo and the State, only Dr. Jaramillo filed the motion for partial summary judgment.
[8] The trial court's certification of the judgment as final under Civil Procedure article 1915 was upheld in Johns v. Jaramillo, 98-2507 (La.App. 4th Cir.11/25/98), 724 So.2d 255.