524 So.2d 191 (1988)
Prince A. WILLIAMS
v.
Jack KUSHNER, et al.
No. CA-8709.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1988.
Writ Granted June 2, 1988.
Rene A. Pastorek, Windhorst, Pastorek & Gaudry, Gretna, for defendant-intervenor-cross-appellee, Sherman Bernard, Com'r of Ins., State of La.
*192 Sam A. LeBlanc, III, Robert J. Conrad, Jr., Richard A. Goins, Adams and Reese, New Orleans, for intervenors-cross-appellees, Louisiana State Medical Soc. and Louisiana Medical Mut Ins. Co.
Joseph W. Thomas, Ammon L. Miller, Angelique A. Reed, New Orleans, for appellant, Prince A. Williams.
Before GULOTTA, C.J., and LOBRANO and WARD, JJ.
WARD, Judge.
We are called upon in this case to determine whether the 500,000 dollar limitation of La.R.S. 40:1299.42(B)(1) on damages recoverable for injuries caused by the malpractice of a private health care provider violates the Right to Individual Dignity and Access to Courts clauses of the Louisiana Constitution of 1974.
The unconstitutionality of the limitation was asserted in a petition for damages filed by Prince A. Williams on behalf of his minor son, Mark L. Williams, for a birth injury allegedly caused by the medical malpractice of Dr. Jack Kushner, the obstetrician who delivered the child on February 11, 1982. After Dr. Kushner admitted liability by settling for his maximum statutory liability of $100,000.00, a jury found damages totalling $1,829,000.00.[1] In response to Williams's motion for judgment in the full amount of the jury's verdict, the Louisiana Patient's Compensation Fund asserted the 500,000 dollar limitation. After the Louisiana State Medical Society and the Louisiana Medical Mutual Insurance Company (LAMMICO) intervened to assert their interests in the case, the Trial Court conducted a lengthy hearing on the question of the constitutionality of the limitation, finally upholding it against all of Williams's constitutional challenges. Judgment was rendered in favor of Prince Williams for damages of $400,000.00, which, when added to the $100,000.00 paid by Dr. Kushner, brings the judgment to the maximum permitted by R.S. 40:1299.42(B)(1). In his appeal to this Court, Williams reasserts his claims that the limitation violates Sections 3 and 22 of Article I of the Louisiana Constitution. He also contends the Trial Court erred in refusing to impose penalties and attorney fees against the Patient's Compensation Fund for its failure to pay his allegedly undisputed claim. Additionally, the Patient's Compensation Fund appeals the amount of damages, an issue which must be addressed before the constitutional questionwhich becomes moot unless we affirm damages in an amount which exceeds the limitation.

DAMAGES
At the jury trial, the parties stipulated that Mark Williams was permanently injured at birth. The injury, which occurred during delivery, is damage to the brachial plexus, the nerves running from the spinal cord to the arm. As a result of the injury, Mark's right arm and hand are practically useless. The arm hangs, atrophied, at his side. He can move it only slightly from the shoulder and uses it in daily activities as one would use an inanimate object.
Expert testimony was presented at the trial to show the effect of Mark's disability upon his psychological and social development and upon his future earning capacity. Although Mark was not yet three years old at the time of trial, a psychiatrist testified that Mark was developing mental and emotional responses to his physical handicap. He was inhibited, avoiding rather than seeking challenges as would a normal two year old, and he was beginning to display signs of a poor self image. In order to overcome these problems, the psychiatrist recommended a regular course of therapeutic counseling for Mark and his parents. Experts in the fields of economics and occupational therapy and rehabilitation testified that Mark's career options will be limited by his disability. The experts did not agree as to the amount of the wage loss Mark will suffer, but the highest estimate was well over $200,000.00.
*193 In light of all of the evidence of general damages, future medical expenses and loss of earning capacity, we conclude that Mark Williams has damages compensable by an award of at least $500,000.00. This conclusion, however, is not an affirmance of the jury verdict of $1,890,000.00, but only a finding which makes it necessary for us to consider the alleged unconstitutionality of the statutory limitation which prohibits Williams from recovering more than $500,000.00.

THE STATUTE
The challenged statute, R.S. 40:1299.42(B)(1), is part of the Louisiana Medical Malpractice Act of 1975. Among other provisions, the Act offers advantages to private health care providers (including hospitals, physicians, dentists, nurses and others) who qualify under its terms. To become a qualified provider, an individual or legal entity files with the Commissioner of Insurance proof of financial responsibility, in the form of self-insurance or a policy of malpractice liability insurance, of at least $100,000.00. Additionally, the provider pays into the Patient's Compensation Fund an annual surcharge in an amount actuarially determined by the Insurance Rating Commission. One of the advantages of qualification under the Act is the provision at issue in this case: "The total amount recoverable for any injury or death of a patient may not exceed five hundred thousand dollars plus interest and cost." R.S.40:1299.42(B)(1).[2] Within this absolute maximum, the liability of the qualified provider is limited to $100,000.00 for all malpractice claims arising from the injury or death of one person. R.S. 40:1299.42(B)(2). This limitation on the liability of the medical care provider is not challenged in the present case since Williams settled with the medical care provider.
Under these provisions, the recovery of a successful malpractice claimant cannot exceed $500,000.00: a maximum of $100,000.00 from each qualified provider who is liable, with the balance of the award paid by the Patient's Compensation Fund. The Act further provides that when, as in this case, a qualified provider settles with a claimant for the maximum of $100,000.00, liability is established. La.R.S. 40:1299.44(C)(5). Only the extent of damages remains to be determined in proceedings against the Insurance Commissioner and the Patient's Compensation Fund.

INDIVIDUAL DIGNITY CLAUSE ANALYSIS
The District Court held that the 500,000 dollar limitation did not violate the Individual Dignity Clause of the Louisiana Constitution. In analyzing the limitation under the Individual Dignity clause, Article I, Section 3, the District Court relied upon Sibley v. Board of Supervisors, 477 So.2d 1094 (La.1985) (on rehearing), in which the Court considered a challenge to the constitutionality of R.S. 40:1299.39(B), the section of the Medical Malpractice Act limiting awards against the State to $500,000.00. We agree with the District Court that the Sibley standard is appropriate for analysis of R.S. 40:1299.42(B)(1).
Sibley expressly rejected the traditional three-tier scrutiny of federal equal protection analysis in favor of a more meaningful test which reflects the intent of the drafters of the Louisiana Constitution of 1974. The Sibley test is tailored to the language of the Individual Dignity clause which, in effect, contains its own standards of analysis:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary *194 servitude are prohibited, except in the latter case as punishment for crime.
La. Const., Art. I, § 3.
For purposes of Individual Dignity clause analysis, Sibley found that an injured malpractice claimant is an individual who has been discriminated against because of physical condition.
The law on its face is designed to impose different burdens on different classes of persons according to the magnitude of damage to their physical condition. The statute creates two classes: one, a group of malpractice victims each of whom has suffered damage that would oblige a defendant under our basic law to repair it by paying in excess of 500,000 dollars; another, a class consisting of victims whose damages would not require an award over this amount to make individual reparation. Victims in the former class are prevented from recovering for all their damage, while those in the latter class are allowed full recovery. Sibley, 477 So.2d at 1108.
Thus, Sibley has foreclosed the issue of whether there has been discrimination against a person because of physical condition; the remaining question is whether the statute is unconstitutional, violating the Individual Dignity clause, because it "arbitrarily, capriciously, or unreasonably discriminates."
Sibley makes this determination by requiring the proponent of the statute to show that "there is good reason for the statutory classification, that is, that the legislative classification substantially furthers a legitimate state purpose." Id. at 1109. Apparently, the rationale of Sibley is that if there is good reason for the classification and if the classification substantially furthers a legitimate state purpose, then it is not arbitrary, capricious, or unreasonable.
In addition to this new interpretation of the appropriate standard for Louisiana equal protection analysis, Sibley also announced a departure from the longstanding rule that legislation is presumed constitutional with the opponent carrying the burden of proving that a statute violates the constitution. "When the statute classifies persons on the basis of ... physical condition,... its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis...." Id. at 1107. We now must decide whether the Trial Court erred in finding that the proponents of R.S. 40:1299.42(B)(1) carried their burden of proving that it is not unconstitutional.
First, it is appropriate to consider whether the statutory limitation has a legitimate state purpose as its goal. There can be little serious argument, and none is presented in this case, but that the State of Louisiana has a legitimate interest in the health and welfare of its citizens and that this interest extends to the availability of medical care. The Louisiana Supreme Court has found "the guarantee of continued health care services for our citizens at reasonable cost" to be an "appropriate governmental interest." Everett v. Goldman, 359 So.2d 1256, 1266 (La.1978).
The proponents of R.S. 40:1299.42(B)(1) contend that its absolute limitation on damages which may be recovered by a medical malpractice claimant and the classification which that limitation creates are a means by which the state legitimately fosters reasonably-priced medical care from private providers. This contention, which focuses on the relationship between the limitation of R.S. 40:1299.42(B)(1) and the State's interest in access to private medical care, must be measured by the stringent constitutional rule that a means such as the limitation shall not arbitrarily, capriciously or unreasonably discriminate. Because the proponents must show that the legislature reasonably believed that the means it chose would substantially further the State's interest, we must closely examine the facts and premises the legislature considered before enacting R.S. 40:1299.42(B)(1).
At the District Court hearing, the proponents of the statute, the Patient's Compensation Fund and the intervenors, introduced testimony and documents describing conditions in the health care and insurance *195 industries prior to the enactment of the Medical Malpractice Act in 1975. Legislators who testified in the District Court confirmed that the legislature had been presented with information which depicted the medical malpractice insurance situation as a threat to the affordability and availability of medical care in Louisiana. They further testified that in approving the 500,000 dollar limitation on recoverable damages, they had considered the arguments of those opposing the limitation, including the contention that the limitation discriminated against the most seriously injured malpractice claimants. In the words of one legislator, the limitation was "a legislative decision, not a legal decision," an attempt "to provide as much medical service to as many people at as reasonable a cost as could be provided for in the state of Louisiana."
After hearing five weeks of testimony, the Trial Court concluded that when the legislature passed the Medical Malpractice Act of 1975, it was seeking a solution to a "crisis" that existed in the health care industry of Louisiana, one that would worsen if remedial legislation was not enacted. The Trial Court found that the "crisis," if allowed to continue, would have jeopardized the state of Louisiana's legitimate interest in "the guarantee of continued health care services for our citizens at reasonable cost."
The record supports the Trial Court's finding; it is not manifestly erroneous. And, after accepting this factual finding, we must now only consider whether the Trial Court's holding that the statute did not violate the Individual Dignity clause was erroneous. Did the legislature select an arbitrary, capricious and unreasonable means to its goal by discriminating against classes of those who are physically handicapped, like Mark Williams, and who have proven damages which exceed the 500,000 dollar limitation?
The record before us shows that the legislature intended the provisions of the Medical Malpractice Act as a comprehensive interrelated reform package and that the 500,000 dollar absolute limitation on recovery R.S. 40:1299.42(B)(1) can, as a practical matter, function only in conjunction with the 100,000 dollar maximum liability for providers which is established by R.S. 40:1299.42(B)(2) and with the Louisiana Patient's Compensation Fund established by R.S. 40:1299.44. Together, these statutory provisions were intended to create an atmosphere of certainty in which insurance companies would be able to write medical malpractice insurance in Louisiana at a reasonable cost. Without a limitation on the size of awards, insurance actuaries, who utilize nationwide claims data, must consider in their rate-setting the increasing risk of higher settlements and limitless judgments. Although there had been few awards in excess of 500,000 dollars (and apparently none in Louisiana) before 1975, consideration in rate determinations of judgments which might exceed 500,000 dollars justified radically higher premiums to cover the risk that an insured might incur such a loss.
With a limitation of liability of 100,000 dollars on medical care providers, actuaries can make rate determinations based on a known maximum loss, and premiums paid by medical care providers are lower than if there were no limit. Similarly, with a limitation of 500,000 dollars on the total amount recoverable, the amount of the surcharge medical care providers pay to the Patient's Compensation Fund is calculated on a known risk, and the additional amount that would be required to cover limitless judgments is unnecessary.
Because the cost of increased premiums could reasonably be expected to be passed on to patients, the legislature could have reasonably believed that stabilized insurance rates would retard increases in costs of medical care and would permit medical care providers to offer a full range of services without the threat of exorbitant costs of insurance coverage. Therefore, the legislature, when considering passage of the Medical Malpractice Act, could reasonably have believed the statute would substantially further the state's interest.
We are urged by counsel for Mr. Williams to look at the effects of the Act to determine whether it has in fact accomplished *196 its intended purposes. We decline this suggestion. Whether the statute has in fact achieved its goals is not the question: the Individual Dignity clause is satisfied by our conclusion that the legislature could reasonably have decided that the statute would substantially further a legitimate state purpose; hence it did not act arbitrarily, capriciously, or unreasonably. See, Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d 901, 905 (La.1985), citing Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (supporting our view that the statute need not have in fact achieved the desired effect if the legislature reasonably believed the desired effect would result from the enactment).
The statutory scheme which includes the limitation of R.S. 40:1299.42(B)(1) may not have operated in the precise manner intended by the legislature, and it may not have been a panacea. The courts' role, however, is not to evaluate the statute's effectiveness but its constitutionality, and we cannot say the Trial Court erred in finding no violation of Louisiana's constitutional guarantee to Individual Dignity.

ACCESS TO COURTS ANALYSIS
The second constitutional violation alleged in this case is that malpractice claimants with proven damages in excess of $500,000.00 are denied "an adequate remedy by due process of law and justice" as guaranteed by the Access to Courts clause. La. Const., Art. I, § 22.
The Access to Courts clause of the Louisiana Constitution does not prohibit legislative restriction of legal remedies. Rather it operates only to ensure that the courts will be open to provide remedies which are fashioned by the legislature. Article I, Section 22 is, therefore, a mandate to the courts to be open to hear complaints such as that of Mr. Williams; it is not a limit on the legislature. Crier v. Whitecloud, 496 So.2d 305, 309-310 (La. 1986). The Trial Court, in denying Williams's recovery in excess of 500,000 dollars, did not deprive Williams of an opportunity to assert his rights in judicial proceedings, nor did it deny due process. The right which is protected by due process in this case is the cause of action to recover damages for medical malpractice. Having found that right legislatively limited by R.S. 40:1299.42(B)(1) in a manner which is not arbitrary, capricious or unreasonable, we conclude that the Trial Court's adherence to the limitation does not deprive Williams of an adequate remedy by due process of law.
Because we hold that the proponents of R.S. 40:1299.42(B)(1) have shown that it complies with both Section 3 and Section 22 of Article I of the Louisiana Constitution, Prince Williams may recover from the Patient's Compensation Fund only the balance of his damages not paid by Dr. Kushner, plus interest, up to $500,000.00. Because we hold that the 500,000 dollar limitation on Williams's recovery is valid, and we have held that he has damages of at least that amount, we need not consider the question of whether the jury's full award of $1,829,000.00 was excessive.

PENALTIES AND ATTORNEY FEES
The final issue to be decided in this appeal is whether the Patient's Compensation Fund is liable for penalties or attorney fees as provided by La.R.S. 22:657 and 658. Williams contends that these sections of the Insurance Code are applicable because the damages payable by the Patient's Compensation Fund are in the nature of insurance benefits for the claimant, and he alleges that the Fund delayed unreasonably in evaluating his claim and failed to pay him the amount of the claim which he contends was undisputed.
We pretermit a decision upon Williams's allegations that the Patient's Compensation Fund failed to act as it should have because we agree with the District Court's conclusion that R.S. 22:657 and 658 do not apply in this case. Mark Williams is not an insured, and although the Patient's Compensation Fund functions in some respects like an excess insurance carrier, it is not governed by the Insurance Code. The penalty provisions of the Insurance Code, R.S. 22:657 and 658, like all *197 such penal statutes, must be strictly construed and cannot be extended by analogy. If the Legislature had intended to penalize the Patient's Compensation Fund for conduct such as that alleged by Williams in this case, then penalty provisions would have been included in an appropriate, relevant statute. Absent such a provision, Williams is not entitled to recover penalties or his attorney fees.
For the reasons stated above, the judgment of the Trial Court is affirmed in all respects, all costs of appeal to be paid by Prince A. Williams.
AFFIRMED.
NOTES
[1] The Louisiana Supreme Court determined that Williams was entitled to a jury trial on the amount of damages recoverable from the Louisiana Patient's Compensation Fund. Williams v. Kushner, 449 So.2d 455 (La.1984).
[2] This section was amended by Act 435 of 1984 to provide that the limitation shall not apply to "future medical care and related benefits." Act 435 also enacted R.S. 40:1299.43, the procedural provisions for the exemption of future medical expenses, which expressly states that it applies only to malpractice claims filed on or after September 1, 1984. Hence, the absolute 500,000 dollar limitation is applicable in the present case which was filed in 1983.