# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 17, 2013

Lyle W. Cayce
Clerk

No. 12-40915

JOHN E. WILLOUGHBY; WENDY WILLOUGHBY,

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA, on behalf of the United States Department of the Army,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants John and Wendy Willoughby (together, "the plaintiffs" or "Willoughby") appeal from dismissal of their Federal Tort Claims Act claim against the United States Army. John Willoughby, an employee of a private Army contractor, was injured on the job when he tripped and fell. Willoughby received workers' compensation benefits through his employer's policy. The employer's contract with the Army required the employer to provide workers' compensation benefits for employees, which were then treated as an

expense that the Army would reimburse. Because Willoughby found the benefits he received to be insufficient to cover his needs, he sued the Government for negligence and premises liability.

The Government moved to dismiss, invoking Texas' workers' compensation exclusive-remedy rule. Under Texas law, general contractors who require subcontractors to provide workers' compensation insurance to their employees and who pay for that coverage are "statutory employers" protected by the exclusive-remedy provision. The plaintiffs argued that the Government was unlike a "statutory employer" because the Government did not follow certain Texas regulations governing statutory employers. The district court granted the motion to dismiss, and Willoughby appealed. Finding no error, we affirm.

## I.

The plaintiffs allege that on June 8, 2007, John Willoughby was injured while working at the federal Red River Army Depot ("RRAD") when he tripped over a bundle of cables and fell onto the floor of the Depot, requiring significant medical treatment.[1] At the time of the accident, Willoughby was employed by a government contractor, Lear Siegler Services, Inc. ("LSI"), as a mechanic at RRAD. LSI had contracted with the U.S. Army to provide additional workforce to support the Army's mission at RRAD. Willoughby received workers' compensation benefits for his injury through LSI's workers' compensation insurance plan, which the Government required LSI to provide to its employees working at RRAD. However, because Willoughby found the benefits he received to be insufficient to cover his needs, he sued the Government for negligence and premises liability.

---

[1] Wendy Willoughby alleges that she suffered a loss of companionship as a result of her husband's injuries. The parties do not dispute that Wendy Willoughby's claims are derivative of her husband's claims against the United States. For simplicity's sake, both Willoughbys' claims are discussed as if they were unitary.

2

No. 12-40915

Willoughby filed suit against the Government in the United States District Court for the Eastern District of Texas. The Government moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that it was entitled to assert the state-law defense that recovery against it was precluded by Texas' Workers' Compensation Act's exclusive remedy rule because the Government, through LSI, had already paid Willoughby the workers' compensation benefits he was due.[2] After a hearing, the district court concluded that the Government was entitled to raise the exclusive-remedy defense as a Texas "statutory employer,"[3] and granted the motion to dismiss. The plaintiffs appealed.

## II.

The district court had jurisdiction over this suit under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2674. Willoughby timely exhausted his administrative remedies by submitting a claim for personal injury with the Department of the Army, which the Army denied. The question of whether the United States has waived sovereign immunity pursuant to the FTCA goes to the court's subject-matter jurisdiction, *see, e.g.*, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 289 (5th Cir. 2012); *Spotts v. United States*, 613 F.3d 559, 566-67, 573 (5th Cir. 2010), and may therefore be resolved on a Rule 12(b)(1) motion to dismiss, *see, e.g.*, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

This Court has jurisdiction to review the final decisions of district courts. 28 U.S.C. § 1291. The district court entered final judgment in favor of the defendant on July 19, 2012, and the plaintiffs filed their notice of appeal on August 13, 2012, making the appeal timely. *See* FED. R. APP. P. 4(a)(1)(A).

---

[2] *See* TEX. LAB. CODE § 408.001(a) (exclusive-remedy provision).

[3] *See id.* §§ 406.123(a), (e), 408.001(a).

3

No. 12-40915

### III.

We conduct a de novo review of orders granting the Government's motion to dismiss an FTCA complaint under Rules 12(b)(1) and 12(b)(6). *E.g.*, *Ramming*, 281 F.3d at 161. The plaintiffs, as the parties asserting federal subject-matter jurisdiction, bear the burden of proving that its requirements are met. *See id.* "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (citation omitted).

"In applying Rule 12(b)(1), the district court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Here, the district court did not resolve any disputed facts, so we . . . consider the allegations in the plaintiff's complaint as true. Our review is limited to determining whether the district court's application of the law is correct and, to the extent its decision was based on undisputed facts, whether those facts are indeed undisputed. We then ask if dismissal was appropriate." *Spotts*, 613 F.3d at 565-66 (quotation marks, citations, alterations, and footnote omitted).

### IV.

### A.

The Federal Tort Claims Act ("FTCA") is the exclusive remedy for suits against the United States or its agencies sounding in tort. 28 U.S.C. § 2679(a). The FTCA grants a limited waiver of sovereign immunity and allows tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. "[T]he words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." *United States v. Olson*, 546 U.S. 43, 46-47

4

No. 12-40915

(2005) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955); S. Rep. No. 1400, 79th Cong., 2d Sess., 32 (1946) (stating that purpose of FTCA was to make the tort liability of the United States "the same as that of a private person under like circumstance, in accordance with the local law")).  All that is required is "a similar analogy" because the plain text of § 2679 uses the modifier "like" rather than "the same," and that language reflects a deliberate choice on the part of Congress to delimit the scope of the FTCA's limited waiver of sovereign immunity.  *See id.*; *Indian Towing*, 350 U.S. at 64; *see also, e.g.*, *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992) ("[T]he Government's consent to be sued must be construed strictly in favor of the sovereign[.]") (citation and quotation marks omitted).

"Whether a private person in 'like circumstances' would be subject to liability is a question of sovereign immunity and, thus, is ultimately a question of federal law.  Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.  Inherent differences between the government and a private person cannot be allowed to disrupt this analysis.  The Fifth Circuit has consistently held that the Government is entitled to raise any and all defenses that would potentially be available to a private citizen or entity under state law.  Therefore, if a private person under 'like circumstances' would be shielded from liability pursuant to a state statute, lower courts must decline to exercise subject-matter jurisdiction."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 288-89 (citing *Olson*, 546 U.S. at 44) (other citations omitted).

The government is authorized by Congress to provide workers' compensation insurance for federal employees;[4] however, Congress has not

---

[4] *See, e.g.*, Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101 *et seq.*

granted permission for the government to provide coverage to contractors.[5] Accordingly, the United States cannot directly pay workers' compensation benefits to non-federal employees or employees of independent contractors.[6] Instead, the Army provided in its contract with LSI that LSI must provide workers' compensation coverage for its employees in compliance with Texas law, but the Army agreed to pay the cost of the premiums directly to LSI as an "allowable cost."[7]   The government argues that under the Texas Workers' Compensation Act, it is entitled to raise the exclusive remedy defense because Willoughby received workers' compensation benefits that the government contractually required LSI to provide.

The Texas Workers' Compensation Act ("TWCA") provides that workers' compensation benefits are the exclusive remedy for employees against employers for work-related injuries and deaths.[8]   In some situations general contractors

---

[5] *Cf.* 42 U.S.C. § 1651(a) (providing that the Government must provide workers' compensation coverage to employees on certain military bases); 48 C.F.R. § 28.309(a) (requiring the Government to provide such coverage to certain contractors by contract pursuant to § 1651(a)); *id.* § 52.228-3 (setting out required language for contract provision required by § 28.309(a)).

[6] *See McWhinnie v. United States*, No. 08-6071, 2009 WL 8764296, at *3 (6th Cir. Nov. 25, 2009) (unpublished).

[7] The master contract provided, in relevant part: "[T]he contractor shall pay their employees at least the wages and fringe benefits found by the Department of Labor to prevail in the locality (Clause I-24 'Service Contract Act, as amended'). This is a requirement of all subcontracts under this contract. The prime contractor is resposible [*sic*] to make sure all subcontractors comply with this requirement." Contract ¶ A-2 (citing 48 C.F.R. § 22.10). Section 22.1002-1 (a subsection of § 22.10) of the Code of Federal Regulations provides, in relevant part, that "General Service contracts over $2,500 shall contain mandatory provisions regarding minimum wages and fringe benefits, safe and sanitary working conditions, notification to employees of the minimum allowable compensation, and equivalent Federal employee classifications and wage rates." 48 C.F.R. § 22.1002-1. The master contract lists, as a fringe benefit, "Workers' Compensation Insurance (Defense Base Act)," incorporating by reference 48 C.F.R. § 52.228-3. Contract at ¶ I-38. The Task Order for LSI also incorporated § 52.228-3. Task Order at ¶ IF0395.

[8] TEX. LAB. CODE § 408.001(a) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a

may be liable for the injuries sustained by the employees of their subcontractors if the subcontractor is under- or uninsured. Texas, however, extends its exclusive-remedy protection to general subcontractors who, by written agreement, require their subcontractors to obtain workers' compensation insurance. TEX. LAB. CODE § 406.123(a). Section 406.123(a) of the TWCA provides:

> A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.

*Id.* A premises owner is considered a "general contractor" within the meaning of section 406.123 if the owner "provides" workers' compensation to a contractor who performs work for the owner. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 438-39 (Tex. 2009).

If the general contractor or premises owner "provides" workers' compensation insurance in this manner, it becomes a statutory employer of the subcontractor's employees for the purposes of the TWCA:

> An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state.

TEX. LAB. CODE § 406.123(e). If a general contractor or premises owner adheres to the requirements of section 406.123, then as a "statutory employer" it is effectively immune from the claims brought by a subcontractor because the employee's workers' compensation benefits are his or her exclusive remedy. *See id.* § 408.001(a). To become a statutory employer under Texas law, a premises owner or general contractor need not personally obtain or directly pay for the

---

legal beneficiary against the employer of an agent or employee of the employer for the death of or a work-related injury sustained by the employee.").

insurance or benefits. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 353 (Tex. 2009) (citing TEX. LAB. CODE § 406.123(a)). Rather, "[t]he Act only requires that there be a written agreement to provide workers' compensation insurance coverage." *Id.*

However, the TWCA and the Texas Administrative Code set out additional procedural requirements that statutory employers must follow, for instance:

> (f)     A general contractor shall file a copy of an agreement entered into under [section 406.123] with the general contractor's workers' compensation insurance carrier not later than the 10th day after the date on which the contract is executed . . .
>
> (g)     A general contractor who enters into an agreement with a subcontractor under [section 406.123] commits an administrative violation if the contractor fails to file a copy of the agreement as required by Subsection (f).

TEX. LAB. CODE § 406.123(f)-(g). The Administrative Code sets out similar requirements:

> An agreement between a general contractor and a subcontractor made in accordance with the Texas Labor Code, § 406.123(a),(d),(e) or (l) shall:
>
> (1)     be in writing;
>
> (2)     state that the subcontractor and the subcontractor's employees are employees of the general contractor for the sole purpose of workers' compensation coverage;
>
> (3)     indicate whether the general contractor will make a deduction for the premiums;
>
> (4)     specify whether this is a blanket agreement or if it applies to a specific job location and, if so, list the location;
>
> (5)      contain the signatures of both parties;
>
> (6)     indicate the date the agreement was made, the term the agreement will be effective, and estimated number of workers affected by the agreement.

No. 12-40915

28 TEX. ADMIN. CODE § 112.101(a).  In a similar vein, section 406.005 of the TWCA requires employers to notify each employee of whether the employee is covered by workers' compensation insurance at a "conspicuous location" at the employer's principal place of business in language adopted by the Labor Commissioner, or else be held in administrative violation.  TEX. LAB. CODE § 406.005.  Essentially, these additional procedures ensure that the employees receive sufficient notice of their rights and the terms of the workers' compensation insurance benefits available to them.

## B.

The parties agree that in this case the Government has taken the basic steps it needs to take to avail itself of the exclusive-remedy rule as a statutory employer, *viz.*, by requiring, in writing, that LSI provide its employees with workers' compensation benefits.  *See HCBeck*, 284 S.W.3d at 353 ("The Act only requires that there be a written agreement to provide workers' compensation insurance coverage."); *Entergy*, 282 S.W.3d at 438-39 (holding a premises owner is a "general contractor" for purposes of the statutory employer provision).  What the parties dispute is the significance of the Government's failure to adhere to the letter of the filing and notice requirements in the above code and regulatory provisions.  Willoughby argues that if the Government is not *required* to give notice that its independent contractors' employees are covered by the TWCA, as Texas law requires of other employers in the State, the employees will not be assured of receiving the required notice such that they can make an informed election regarding their coverage.

This Court has held that the government does not waive its sovereign immunity under the FTCA in situations involving minor procedural differences between the government and private actors.  In *Owen v. United States*, 935 F.2d 734 (5th Cir. 1991), this Court held that the United States could take advantage of Louisiana's cap on medical-malpractice damages applicable by statute to

state-licensed medical providers who provide proof of financial responsibility and participate in a patients' compensation fund, despite the fact that the United States had not contributed to the fund as is required of state providers. *Id.* at 737. We reasoned that because the tort victim would be subject to the damages cap if the tortfeasor had been an in-state provider, and because the solvency of the Government could not reasonably be questioned, the Government was "like" employers who participated in the scheme. *See id.* at 737-38. Similarly, in *Roelofs v. United States*, 501 F.2d 87 (5th Cir. 1974), this Court held that the Army was entitled to assert Louisiana's statutory employer defense to an FTCA claim because the Army required its contractor to maintain workers' compensation insurance for its employees; the court rejected the plaintiffs' argument that because the Government cannot be forced by a state to purchase workers' compensation insurance, it is inherently on unequal footing with state private actors. *Id.* at 90-92.

While the facts of *Roelofs* are similar to this case, there the plaintiffs did not allege that the Government failed to follow substantive filing and notice regulations, as Willoughby argues here.[9] However, the filing and notice regulations here are akin to the damages cap at issue in *Owen*. Here, as in *Owen*, the government's failure to adhere to the procedural requirements did not make a meaningful difference in the outcome of the litigation from the plaintiff's perspective.[10] Willoughby has not claimed that he did not know that he was covered by workers' compensation insurance, or that he would have done anything differently, such as opted out of LSI's workers' compensation

---

[9] For the same reason, this case is distinguishable from a district court case, *Doss v. United States*, 793 F. Supp. 2d 859 (E.D. Tex. 2011), with facts similar to those in this case.

[10] As another court has explained, in *Owen*, "the effect of the statutory scheme placed the tort victim in exactly the same position that would have resulted had the victim been injured by any other similarly-situated private party." *Hill v. United States*, 81 F.3d 118, 121 (10th Cir. 1996).

No. 12-40915

insurance, had the government given him the notice required by Texas law that he was covered by the TWCA.

Of course, the notice requirement is important because it allows employees to make an informed choice about their workers' compensation insurance coverage options. Employees are permitted to opt out of workers' compensation coverage and to retain their common-law rights of action to recover damages for personal injuries against the employer, albeit on a fault basis. *See* TEX. LAB. CODE § 406.034. Section 406.034 allows employees to opt out of the workers' compensation system, including the applicability of the exclusive-remedy bar. *See id.*; *see also Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 532 (Tex. 1995).[11] Thus, the notice requirement serves a critical function in ensuring that the employee is able to make an informed election concerning his or her rights.[12]

---

[11] Section 406.034 provides, in relevant part:

(a)     Except as otherwise provided by law, unless the employee gives notice as provided by Subsection (b), an employee of an employer waives the employee's right of action at common law or under a statute of this state to recover damages for personal injuries or death sustained in the course and scope of the employment.

(b)     An employee who desires to retain the common-law right of action to recover damages for personal injuries or death shall notify the employer in writing that the employee waives coverage under this subtitle and retains all rights of action under common law. . . .

(d)     An employee who elects to retain the right of action or a legal beneficiary of that employee may bring a cause of action for damages for injuries sustained in the course and scope of the employment under common law or under a statute of this state. . . .

TEX. LAB. CODE §§ 406.034(a), (b), (d).

[12] *Ferguson v. Hosp. Corp. Int'l, Ltd.*, 769 F.2d 268, 271 (5th Cir. 1985) ("Because the workers' compensation scheme remains voluntary in Texas, an employer's notice . . . is critical[.]"), *superseded on other grounds as stated in, e.g., Warnke v. Nabors Drilling USA, L.P.*, 358 S.W.3d 338, 344 n.5 (Tex. App. 2011); *cf., e.g., Esquivel v. Mapelli Meat Packing Co.*,

11

No. 12-40915

However, Willoughby has not alleged or implied that he lacked notice of his right to opt out of his workers' compensation insurance coverage or that he would have opted out if the government had given him the required notice. Instead, he argues that the government may never assert this state-law defense because Texas cannot force the government to adhere to the filing and notice regulations or to pay the administrative fines for failing to do so. We rejected that argument in *Roelofs* and held that, notwithstanding the fact that the Government cannot be forced to purchase workers' compensation insurance or else be fined, the government may nevertheless be under "like circumstances" as a private employer. *See* 501 F.2d at 90-02. This theoretical difference simply is not enough under the "like circumstances" test. Because Willoughby does not allege a lack of notice or prejudice from any lack of notice, the federal government is in "like circumstances" as a Texas statutory employer. Accordingly, Willoughby's workers' compensation benefits are his exclusive remedy, and his claims against the Government were properly dismissed.

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

932 S.W.2d 612, 616 (Tex. App. 1996) ("[C]overage, and, hence the exclusivity bar of the workers' compensation statute[,] does not hinge on whether notice has been provided to the employee.").